**NORTHEAST CELLULAR TELEPHONE COMPANY, L.P., et al., Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Respondent.**

Nos. 89–1206, 89–1214.

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 5, 1990.

Decided March 9, 1990.

Rehearing En Banc Denied May 9, 1990.

Alan Y. Naftalin, Washington, D.C., with whom Robert M. Connolly, Louisville, Ky., was on the brief, for petitioner, Northeast Cellular Telephone, L.P., in No. 89–1206. Harold J. Carroll and Susan D. Baer, Boston, Mass., were on the brief, for petitioner, Saco River Cellular, Inc., in No. 89–1214.

Roberta L. Cook, Atty., F.C.C., Washington, D.C., with whom Robert L. Pettit, Gen. Counsel, and Daniel M. Armstrong, Associate Gen. Counsel, F.C.C., Washington, D.C., were on the brief, for respondent.

Michael B. Barr, Bruce D. Peterson, Washington, D.C., and John S. Parks, were on the brief, for intervenor, Portland Cellular Partnership.

Before MIKVA, EDWARDS and SILBERMAN, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

This case presents a procedural challenge to an FCC order granting a license to a cellular radio lottery winner, Portland Cellular Partnership ("Port Cell"). The los-

ers in that lottery, Northeast Cellular Telephone Co. ("Northeast") and Saco River Cellular, Inc. ("Saco River"), claim that the FCC arbitrarily and capriciously waived the requirement that lottery winners establish their financial qualifications within 30 days of having been selected. We hold that the FCC's waiver decision was arbitrary and capricious because it was not based on any rational waiver policy as required by our decision in *WAIT Radio v. FCC*, 418 F.2d 1153 (D.C.Cir.1969). Indeed, given the record in this case, we cannot imagine any standard that would have justified a waiver of the filing of Port Cell's financial qualifications. Accordingly, we vacate the waiver and remand the case to the agency.

## I. BACKGROUND

In 1986, the FCC held a lottery for a license to operate cellular radio service in Portland, Maine. Five applicants entered the lottery: Northeast, Saco River, NYNEX Mobile Communications Company ("NYNEX Mobile"), Community Services Telephone Co. ("Community Services"), and Seacoast Cellular, Inc. ("Seacoast"). Seacoast was tentatively selected as the licensee, with Saco River picked as runner-up.

As a result of a settlement agreement, Seacoast substituted for its own application the application of Portland Cellular Partnership ("Port Cell") which consisted of itself (42% interest), NYNEX Mobile (48% interest) and Community Service (10% interest). Port Cell's ownership has since been divided equally among NYNEX, Seacoast, and Lewiston–Auburn Cellular.

Under FCC rules, Port Cell was required within 30 days of selection to submit evidence of its financial qualifications to operate the system. *Cellular Further Lottery Reconsideration Order*, 59 Pike and Fischer Rad.Reg.2d 407 (1985). Those rules require the lottery winner to present evidence that the lender has (1) committed to provide all necessary financing; (2) identified sufficient unencumbered funds; (3) assessed the applicant's creditworthiness; and (4) dictated the essential terms of the loan. 47 C.F.R. § 22.917(b)(1)(i) (1986). If the selected applicant fails to satisfy these requirements, the applicant is disqualified and the second-place applicant is substituted as the tentative lottery selectee. 59 Pike and Fischer Rad.Reg. at 413.

On July 24, Port Cell tendered a letter of credit from NYNEX Credit Company ("NYNEX Credit") in satisfaction of the financial qualifications requirement and a balance sheet that estimated Port Cell's costs of construction and operation at $2.8 million. The letter of credit confirmed that NYNEX was "prepared to make available to [Port Cell] a total credit package of $3 million." The letter, however, did not include any evidence that NYNEX Credit had assessed Port Cell's creditworthiness or agreed to any terms or conditions of the financing arrangement.

Saco River and Northeast (the only remaining lottery participants) petitioned the Commission to deny Port Cell's application on two grounds. First, they claimed that Port Cell had failed to demonstrate its financial qualifications because the NYNEX letter did not establish that the credit package was guaranteed, that the essential terms were set, that NYNEX had assessed Port Cell's creditworthiness, or that NYNEX had sufficient capital. Second, they asserted that the FCC had prejudiced their settlement opportunities by permitting two co-owned applicants—Seacoast and Community Service—to remain in the same lottery.

These claims were denied by the Mobile Services Division of the Commission ("MSD"). *Portland Cellular Partnership*, 2 FCC Rcd 5586 (1987). Saco River and Northeast filed petitions for review with the FCC, which the Commission also denied. *Portland Cellular Partnership*, 4 FCC Rcd 2050 (1989). The Commission found that even though Port Cell had failed to comply with the FCC rules with respect to financial qualifications, the Commission would waive those qualifications because strict enforcement was not in the public interest. The Commission found that based on its prior dealings with NYNEX Credit, it was confident that NYNEX met all of the necessary qualifications. It determined that strict compliance would not

serve any interest, and would only result in unnecessary delay. The Commission also rejected the cross-ownership claim.

Northeast and Saco River have appealed both the waiver and cross-ownership decisions. Because we find that the case must be remanded on the basis of the waiver decision, we need not reach the cross-ownership issue.

## II. Waiver of Financial Qualifications

There is no question here that Port Cell has failed to comply strictly with regulations requiring that it demonstrate its financial qualifications. The FCC concluded that the NYNEX letter was defective under § 22.917(b)(1)(i) because it did not contain the terms of the loan or state that NYNEX had assessed the creditworthiness of the loan applicant. 4 FCC Rcd at 2050. The Commission nevertheless concluded that there was good cause to waive the specific requirements of the rule because the Commission knew from its "lengthly [sic] experience" with NYNEX Mobile and from "materials on file in other [FCC] proceedings" that Port Cell was financially capable of constructing and operating its proposed cellular system. *Id.* at 2051.

Apparently, the Commission concluded that because of the relationship between NYNEX Credit and NYNEX Mobile, NYNEX Mobile's role as a general partner in Port Cell, and NYNEX Mobile's proven interest in participating in the cellular industry, it was not unreasonable to assume that the funds were available for Port Cell's venture. From this, the Commission would have the court infer that the FCC's familiarity with NYNEX's credit practices was sufficient to demonstrate that NYNEX had assessed the creditworthiness of the loan applicant and that the loan terms would follow a standard pattern.

The FCC has authority to waive its rules if there is "good cause" to do so. 47 C.F.R. § 1.3. The FCC may exercise its discretion to waive a rule where particular facts would make strict compliance inconsistent with the public interest. *WAIT Radio v. FCC*, 418 F.2d 1153, 1159 (D.C.Cir. 1969). However, as we instructed in *WAIT Radio*, those waivers must be founded upon an "appropriate general standard." We held that "sound administrative procedure contemplates waivers ... granted only pursuant to a relevant standard ... [which is] best expressed in a rule that obviates discriminatory approaches." 418 F.2d at 1159.

In remanding *WAIT Radio* to the agency to formulate an acceptable waiver policy, we held that a waiver is appropriate only if special circumstances warrant a deviation from the general rule and such deviation will serve the public interest. The agency must explain why deviation better serves the public interest and articulate the nature of the special circumstances to prevent discriminatory application and to put future parties on notice as to its operation. *See also Industrial Broadcasting Co. v. FCC*, 437 F.2d 680 (D.C.Cir.1970) (indicating need for articulation of special circumstances beyond those considered during regular rulemaking).

The FCC purports to have complied with *WAIT Radio* in granting its waiver to Port Cell. Yet, it has not even come close to doing so. The FCC Order concluded that waiver under these circumstances would serve the public interest contemplated by the financial requirements provisions. It reasoned that if there is "no speculation" as to the financial qualifications of the tentative selectee, strict enforcement will not serve the regulation's purpose of reducing delays in cellular service. 4 FCC Rcd at 2050–51.

The FCC's reasoning wholly ignores the second requirement of *WAIT Radio:* It does not articulate any standard by which we can determine the policy underlying its waiver. The FCC's reliance upon a bare conclusion that there is "no speculation" with respect to Port Cell is astounding. The record reveals nothing unique about Port Cell's situation. This is a case where a very experienced applicant that was clearly aware of the rule, submitted two financial showings which patently did not comply with that rule. The only thing unusual about Port Cell is that one of its

partners is universally recognized as fiscally strong and technically qualified. The Commission's recognition of Port Cell's financial qualifications, then, amounts to nothing more than a "we-know-it-when-we-see-it" standard.

In *Airmark Corp. v. FAA,* 758 F.2d 685 (D.C.Cir.1985), this court vacated several waivers for failure to articulate identifiable standards. The FAA had published rules requiring compliance with five criteria to qualify for an exemption; however, it had granted such exemptions only haphazardly. We ruled that "[e]lementary evenhandedness requires that if all five factors must be met by one petitioner, then all five factors must be met by the next." *Id.* at 692. The difficulty presented here is even more striking, since the FCC has not simply deviated from exemption standards; it never stated any standards in the first place.

The only factor stated by the FCC that differentiates Port Cell from any other applicant is the FCC's undefined "familiarity" with one of Port Cell's partners and Port Cell's financial backer. Standing alone, this does not even begin to approach a standard for demonstrating that a licensee is "indisputably ... financially qualified" and thus not required to provide a full statement of financial qualifications. Although the FCC purports to have had vast experience with NYNEX in other markets and contexts, the Commission provides no indication of what aspects of that experience are dispositive, or how those aspects relate to the financial qualifications of Port Cell. As noted, NYNEX is only a minority partner in Port Cell. Thus, whether NYNEX Mobile or its parent NYNEX have been worthy licensees in other markets would not be sufficient to confirm Port Cell's qualifications. Indeed, taking the Commission at its word, it would seem that any organization most likely could avoid producing financial qualifications by bringing a Bell Operating Company in as a 5% partner.

Under the Commission's blanket statement, future applicants—and this court—have no ability to evaluate the applicability and reasonableness of the Commission's waiver policy. At a minimum, the FCC needed to indicate what information it had about NYNEX Credit's uncommitted assets, NYNEX Credit's practices in evaluating the creditworthiness of loan applicants, the terms it would imply into NYNEX Credit's loan letter based upon its prior experience, and its basis for concluding that NYNEX Credit would commit funds regardless of whether NYNEX Mobile abandoned the partnership. Absent a finding that this information was considered and used in formulating an articulable standard at the time the waiver was granted, the FCC must disqualify Port Cell's application.

Despite the Commission's assurances that there is no speculation involved in its decision to excuse Port Cell from strict compliance, its statement invites nothing but speculation by all other participants in FCC proceedings. Mere conclusory statements as to the unique reputation and experience of Port Cell's lender and minority partner are not sufficient to satisfy the requirements of *WAIT Radio.*

### III. CONCLUSION

We hold that the FCC's decision was arbitrary and capricious because it was not based on any rational waiver policy. The agency failed to state any legitimate basis for granting Port Cell a waiver from the Commission's financial qualifications requirements. Bigness and national reputation are not reasonable standards for a waiver policy, and the Commission indeed eschews such a characterization of its policy. It follows that this waiver reflects an outrageous, unpredictable, and unworkable policy that is susceptible to discriminatory application. Accordingly, the petition for review is granted, and the Commission's order is vacated and remanded.

*So Ordered.*