**KELLER COMMUNICATIONS, INC., Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee.**

City of Lewisville, Texas, Intervenor.

No. 97–1001.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 27, 1997.

Decided Dec. 12, 1997.

Dan Warnock, Washington, DC, argued the cause for appellant. With him on the briefs was Christopher D. Imlay, Washington, DC.

K. Michele Walters, Counsel, Federal Communications Commission, argued the cause for appellee. With her on the briefs were William E. Kennard, General Counsel, Napa, CA, Daniel M. Armstrong, Associate General Counsel, and Roberta L. Cook, Counsel, Washington, DC.

L. Andrew Tollin, Washington, DC, and Jeffrey S. Cohen were on the brief for intervenor City of Lewisville, Texas. Lawrence J. Movshin, Washington, DC, entered an appearance.

Before: GINSBURG, SENTELLE and TATEL, Circuit Judges.

TATEL, Circuit Judge:

The Federal Communications Commission waived several regulatory requirements to permit a Texas city to add a nearby town's frequency to its own public safety radio system. Because the Commission's determination that the waiver was necessary to protect public safety finds support in the record and is neither arbitrary nor capricious, we affirm the Commission.

## I

Like many municipalities, Lewisville, Texas, uses a "trunked radio system" for fire, police, and emergency medical communications. Unlike conventional radio systems, which have a specific frequency channel assigned to mobile and base stations, trunked systems have multiple channels for use as a "trunk group." *See* 47 C.F.R. § 90.7 (1996). Because computers assign calls to the next available channel on trunked systems, more than one party can communicate at a time. Under Commission rules, conventional channel licensees must share their channels, but trunked system licensees enjoy exclusive use of their channels. *See id.* §§ 90.631(b), 90.633(b).

By late 1992, Lewisville had grown concerned that its public safety radio system was overloaded. At the same time, its neighboring town, Flower Mound, worried that its conventional safety communications system had become inadequate. To solve both their problems, the two towns agreed that Lewisville would add Flower Mound's conventional channel to its trunked system and then, with its newly expanded capacity, take over communications services for Flower Mound. Because trunked systems have exclusive use of added channels, Commission rules in effect at the time required Lewisville to get consent from anyone who might be sharing Flower Mound's conventional channel. 47 C.F.R. § 90.615(b)(2)(ii) (1992). To accomplish this, the rules required Lewisville to submit its application to a "frequency coordinator" who, after checking the Commission's database, would either certify that no one else had a license to use Flower Mound's channel or inform Lewisville that someone did. *See id.* § 90.615(b)(2)(iv). If another license is discovered, even a canceled or expired one, the Commission's "database deletion policy" prohibits the coordinator from forwarding the application to the Commission. *See Amendments of Parts 1 and 90 of the Commission's Rules Concerning the Construction, Licensing, and Operation of Private Land Mobile Radio Stations, Report and Order,* 6 F.C.C.R. 7297, 7301–02 (1991).

In accordance with these requirements, Lewisville sent its application to the public

safety frequency coordinator. On February 2, 1993, the day Flower Mound's license expired, the coordinator certified that no co-licensee shared Flower Mound's frequency and sent the application to the Commission. The coordinator, however, failed to detect that one Robert Greene also owned a license for Flower Mound's conventional frequency. Although Greene's license had expired some three months earlier because he had failed to construct a station within the eight months required by Commission regulations, 47 C.F.R. § 90.633(d) (1996), the license remained in the Commission's database.

Discovering what the frequency coordinator missed, appellant Keller Communications, Inc., an operator of several frequencies in the area, filed a "finder's preference request" for Greene's license. One who alerts the Commission to the existence of a license that has expired due to the license holder's failure to construct a station in time may receive an exclusive license for the discovered channel. *See id.* § 90.173(k). But because finder's preference requests could not be filed until 180 days after the construction deadline, Keller's filing was fatally premature. *See* 47 C.F.R. § 90.173(k)(2) (1992); *Amendments of Parts 1 and 90,* 6 F.C.C.R. at 7307 ("[W]e establish a 180–day window . . . during which we will not accept any finder's requests filed against [the target] licensee."). Although Greene later submitted a petition to cancel his license, the Commission took no action; according to the agency, it does not delete canceled licenses while finder's preference requests are pending.

By now, the Commission faced a bit of a mess—a defective application (Lewisville's); a defective finder's preference request (Keller's); and an expired license in its database (Greene's). Confusing matters further, the Commission mistakenly granted Lewisville the license. Later discovering its error, the Commission revoked the license, explaining in a June 8 letter to Lewisville that its application had been returned to "pending" status and that Flower Mound's license had been reinstated. The letter also informed Lewisville that it could resubmit its application either if it obtained Keller's consent or if the Commission denied Keller's finder's preference request.

Apparently having had enough of the Commission's formal procedures, Lewisville sent a letter to U.S. Senator Phil Gramm, warning that if the Commission failed to grant its application, "[t]he operation of the police and fire departments serving the population of these communities will be adversely affected." Lewisville sent a copy of the letter to the Commission but not to Keller. One month later, the Commission dismissed Keller's premature finder's preference request, informing Lewisville by phone on the same day that it could resubmit its application. Bypassing the frequency coordinator, Lewisville promptly resubmitted its application.

Now it was Keller's turn to act. It filed another finder's preference request as well as a conventional application for Flower Mound's channel, but to no avail. The Commission denied both, rejecting the conventional application because Lewisville had already applied for the frequency and the finder's request because Greene had canceled his license.

On September 3, in an action central to this case, the Commission granted Lewisville's license even though Greene's canceled license remained in the database. Relying on its waiver regulations, which provide that agency rules "may be . . . waived for good cause shown, in whole or in part, at any time by the Commission," 47 C.F.R. § 1.3 (1996), the Commission explicitly waived the database deletion requirement as well as all other defects in Lewisville's application:

> Because Greene's station is no longer operating, we are waiving the requirement that the City of Lewisville obtain Greene's consent to convert this channel to trunked use and, alternatively, we are waiving the requirement that Greene's license be deleted from the database prior to coordination of the City of Lewisville for use of this frequency at their location. . . . We find good cause to be present warranting this action. Absent this waiver, the City of Lewisville will be unable to accomodate [sic] the Town of Flowermound [sic] and Flowermound [sic] public safety entities (including police, fire, and ambulance services) will be left without critical radio communications. Further, the City of Lewisville's

police, fire, ambulance and public service departments will be hampered by an overloaded public safety communication system. In light of these factors which weigh heavily in favor of granting the above referenced application and given our statutory mandate to consider the public interest, we are waiving any defects in Lewisville's application.

In a Petition for Reconsideration to the Private Radio Bureau, Keller argued that the Commission improperly exercised its waiver authority and committed a variety of other procedural errors. After the Bureau denied the petition, Keller appealed to the full Commission, reiterating its arguments and adding that Lewisville had violated the agency's *ex parte* rules by sending the Gramm letter to the Commission but not to Keller. Finding no *ex parte* violation and concluding that "the waiver was necessary to protect the public safety and security of two populous communities in the Dallas/Fort Worth area," the Commission denied Keller's application for review. *City of Lewisville, Texas Application for Modification of Trunked Public Safety/Special Emergency Radio Station License Station KNGK 472, Memorandum Opinion and Order,* 11 F.C.C.R. 19638, 19642 (1996). Keller now appeals, arguing that the Commission's actions were arbitrary, capricious, and an abuse of discretion. *See* 5 U.S.C. § 706(2)(A) (1994).

## II

■ In addition to its complaint about the waiver, Keller challenges virtually every other Commission action in this case. Granting Lewisville's application, it argues, was improper not just because Greene's license remained in the database, but also because the application—whether labeled as an application for assignment, modification, or new station—was technically defective under Commission rules. Keller also argues that the Commission erred by placing Lewisville's application in pending status rather than dismissing it, by reinstating Flower Mound's license on its own motion, and by allowing Lewisville to resubmit its application directly to the Commission rather than to the frequency coordinator. As Keller conceded at oral argument, however, we need not consider any of these issues if the Commission

acted within its authority by waiving the defects in Lewisville's application, including the database deletion requirement. If proper, the waiver eliminated Greene's license as a bar to Lewisville's application, removed any technical defects in the application, and made irrelevant all errors Keller alleges the Commission committed after February 2, the date the frequency coordinator sent Lewisville's flawed application to the Commission. *See* Letter from W. Riley Hollingsworth, Federal Communications Commission, to Raymond A. Kowalski, Counsel for Appellants (Aug. 9, 1994) (explaining that the result of the waiver was "to place the parties in the position they would have been in had the coordinator not erred").

■ The Commission's rules allow it "at any time" to waive requirements for good cause. *See* 47 C.F.R. § 1.3 (1996). As we have held, "an agency's discretion to proceed in difficult areas through general rules is intimately linked to the existence of a safety valve procedure for consideration of an application for exemption based on special circumstances." *WAIT Radio v. FCC,* 418 F.2d 1153, 1157 (D.C.Cir.1969). The Commission may waive its rules if "particular facts would make strict compliance inconsistent with the public interest." *Northeast Cellular Tel. Co. v. FCC,* 897 F.2d 1164, 1166 (D.C.Cir.1990); *see also Omnipoint Corp. v. FCC,* 78 F.3d 620, 631 (D.C.Cir.1996) (Commission properly waived comment requirement because the waiver was "necessary in order to reduce the harm resulting from delay"). In exercising its waiver authority, however, the Commission may not "act out of unbridled discretion or whim . . . any more than in any other aspect of its regulatory function," *WAIT Radio,* 418 F.2d at 1159, and it must clearly state in the record its reasons for granting the waiver. *See Basic Media Ltd. v. FCC,* 559 F.2d 830, 833 (D.C.Cir.1977); *see also Northeast Cellular,* 897 F.2d at 1166 ("The agency must explain why deviation better serves the public interest and articulate the nature of the special circumstances to prevent discriminatory application and to put future parties on notice as to its operation.").

Particularly important to this case, Congress directed the Commission to consider

public safety needs when exercising its discretion, encouraging it to "make available ... radio communication service[s] ... for the purpose of promoting safety of life and property," 47 U.S.C. § 151 (1994), and requiring it to "promote the safety of life and property" when managing the private land mobile services spectrum, *id.* § 332(a)(1). The Conference Report accompanying this latter provision urged the Commission "to be ever vigilant to promote the private land mobile spectrum needs of police departments and other public agencies which need to use such radio services to fulfill adequately their obligations to protect the American public." H.R. CONF. REP. No. 97-765, at 52-53 (1982), *reprinted in* 1982 U.S.C.A.A.N. 2261, 2296. The Commission often exercises its waiver authority to fulfill this mandate. *See, e.g., Waiver of Parts 2 and 90 of the Commission's Rules to Permit New York Metropolitan Area Public Safety Agencies to Use Frequencies at 482-488 MHZ on a Conditional Basis, Order,* 10 F.C.C.R. 4466, 4468 (1995) (waiving requirements because "public safety agencies in the New York City metropolitan area have an urgent and immediate need for additional spectrum capacity for public safety communications"); *Waiver of Sections 90.621(d), 90.623(a), 90.629, 90.633, and 90.651(c) of the Commission's Rules to License Use of Six Conventional 900 MHZ Frequency Pairs for an Advanced Train Control System, Order,* 3 F.C.C.R. 427, 428 (1988) (citing 47 U.S.C. §§ 151, 332(a)(1) in support of waiver granted to facilitate development of an Advanced Train Control System which would "improve railroad safety ... dramatically").

Applying these principles, we think the waiver here was well within the Commission's authority. The Commission had ample reason to believe that the waiver was necessary to protect public safety in both Lewisville and Flower Mound. Lewisville told the Commission that without the license, it would "have no option but to terminate its agreement with the Town of Flower Mound," leaving the growing town "without emergency communications for [its] police and fire protection and emergency medical services," burdening Lewisville "with an overloaded public safety communications system," and creating "emergency situations in which po-

lice, fire and medical units would receive busy signals when they attempt to transmit critical information." In addition to relying on these public safety concerns, the Commission found, reasonably we believe, that the waiver was justified by the coordinator's failure to discover Greene's license and by Lewisville's expenditure of thousands of dollars of public funds in reliance on the agency's mistaken grant of its license. *Memorandum Opinion and Order,* 11 F.C.C.R. at 19641.

■ Challenging Lewisville's public safety claims, Keller points out that Flower Mound possessed other licenses. According to Lewisville, those other channels, part of an old system with limited geographical coverage, were inadequate for primary emergency use. Apparently agreeing with Lewisville, the Commission concluded that the two towns needed to use Flower Mound's conventional channel in conjunction with Lewisville's trunked system to protect public safety in the region. Whether particular channels provide adequate public safety communications is precisely the type of technical issue on which we defer to the Commission's expertise. *See MCI Cellular Tel. Co. v. FCC,* 738 F.2d 1322, 1333 (D.C.Cir.1984) (when the Commission addresses a "highly technical question," the court "must show considerable deference to [its] expertise"). Apart from offering to provide the necessary communication services itself, presumably at an appropriate price, Keller introduced no evidence to counter Lewisville's claim that it needed Flower Mound's license to protect public safety. Keller argues that in denying the Petition for Rehearing, the Commission relied on evidence not submitted until after it granted the original waiver, but the case on which it relies—*National Ass'n of Broadcasters v. FCC,* 740 F.2d 1190, 1204 (D.C.Cir. 1984)—holds only that agencies cannot present arguments in court not relied upon during the administrative process; nothing in that decision bars agencies from relying on evidence submitted at different stages of the administrative process.

■ Keller's only remaining claim is that Lewisville violated the Commission's *ex parte* rules by forwarding a copy of the Gramm letter to the Commission but not to Keller.

Those rules prohibit *ex parte* communications between parties and the Commission in "restricted proceedings." 47 C.F.R. § 1.1208 (1996). The parties disagree about whether the coexistence of the Keller and Lewisville applications created a "restricted proceeding." We need not resolve that issue, however, because although Lewisville's letter may have inspired the Commission to dismiss Keller's finder's preference request, the Commission could not possibly have awarded Keller the license—Keller's preference request was fatally premature. Whether the proceedings were restricted or unrestricted, Lewisville's *ex parte* communication with the Commission was therefore harmless. *See Freeman Engineering Assocs., Inc. v. FCC,* 103 F.3d 169, 184 (D.C.Cir.1997).

Under all of these circumstances, we find no basis for questioning the Commission's waiver. Because the waiver returned the parties to the positions they occupied on February 2, except that Greene's license in the database no longer barred awarding Lewisville the license, we need not address Keller's challenges to the Commission's other post-February 2 actions. Because the waiver also removed any technical defects that might have existed in Lewisville's application, the Commission's order is affirmed.

*So ordered.*