133 F.3d 25
 328 U.S.App.D.C. 162, 10 Communications Reg. (P&F) 51
 SACO RIVER CELLULAR, INC., Appellant
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee
Northeast Cellular Telephone Company, L.P. and Portland
Cellular Partnership, Intervenors
 Nos. 91-1248, 93-1423, & 96-1439.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Sept. 30, 1997.
Decided Jan. 16, 1998.
Rehearing Denied March 19, 1998.
 
 Appeals from Orders of the Federal Communications Commission.
 Alan Y. Naftalin argued the cause for appellant Northeast Cellular Telephone Company, L.P., with whom Peter M. Connolly, Carter G. Phillips and Stephen F. Smith were on the briefs.
 Theresa Fenelon argued the cause for appellant Saco River Cellular, Inc., with whom Harold J. Carroll was on the briefs.
 Laurence H. Schecker, Counsel, Federal Communications Commission, argued the cause for appellee, with whom William E. Kennard, General Counsel, Daniel M. Armstrong, Associate General Counsel, and Roberta L. Cook, Counsel, were on the brief. John E. Ingle, Deputy Associate General Counsel, and Renee Licht, Counsel, entered appearances.
 Anne M. Lobell, Counsel, U.S. Department of Justice, argued the cause for amicus curiae United States of America, with whom Frank W. Hunger, Assistant Attorney General, U.S. Department of Justice, Mary Lou Leary, U.S. Attorney, Marleigh D. Dover, Special Counsel, U.S. Department of Justice, and Richard A. Olderman, Attorney, were on the brief.
 Alan Y. Naftalin, Peter M. Connolly, Mark D. Schneider and Michael A. Nemeroff were on the brief for intervenor Northeast Cellular Telephone Company, L.P. Herbert D. Miller, Jr. entered an appearance.
 Theresa Fenelon and Harold J. Carroll were on the brief for intervenor Saco River Cellular, Inc.
 L. Andrew Tollin and Michael Duele Sullivan were on the brief for intervenor Portland Cellular Partnership. Charles D. Ossola and Michael B. Barr entered appearances.
 Before: EDWARDS, Chief Judge, and GINSBURG and TATEL, Circuit Judges.
 GINSBURG, Circuit Judge:
 
 
 1
 Appellants Saco River Cellular, Inc. and Northeast Cellular Telephone Co., L.P., applicants for a license to provide cellular telephone service in the Portland, Maine area, challenge a series of decisions by the Federal Communications Commission culminating in the award of the license to Portland Cellular Partnership (PortCell). In the most recent decision under review, the Commission concluded that the 1995 amendments to the Paperwork Reduction Act, 44 U.S.C. § 3501 et seq., required it to reinstate PortCell's application, which it had previously dismissed, and consequently to award the license to PortCell. We agree that the 1995 amendments to the PRA obligated the Commission to reconsider its dismissal of PortCell's application. Accordingly, we affirm the agency order awarding the license to PortCell and dismiss as moot Saco River's challenge to the Commission's handling of its application.
 
 I. BACKGROUND
 
 2
 In 1986 the Commission held a lottery for a license to offer cellular phone service in the Portland area. Seacoast Cellular, Inc. placed first among five applicants, followed by Saco River, Community Services Telephone Co., Northeast, and NYNEX Mobile Communications Co. Shortly thereafter Seacoast amended its application to substitute PortCell, a general partnership the original partners of which were Seacoast, NYNEX Mobile, and Community, as the winning applicant. (The current partners are Seacoast, NYNEX Mobile, and Lewiston-Auburn Cellular.)
 
 
 3
 Saco River and Northeast, the remaining two applicants, objected that PortCell was ineligible for a license because it had failed to "obtain a firm financial commitment for the financing necessary to construct and operate for one year its proposed cellular system and amend its application to so demonstrate," as required by 47 C.F.R. § 22.917(b)(1) (1986). The regulation then in force provided that:
 
 
 4
 The firm financial commitment ... shall be from a recognized bank or other financial institution and shall evidence the lender's determination that it has assessed the creditworthiness of the loan applicant and that it is committed to providing the necessary financing, including any actions required of the applicant to continue the commitment in force. Applicants obtaining financing from other than a recognized lending institution must submit proof that the financing entity has such funds available and uncommitted to another cellular application.
 
 
 5
 47 C.F.R. § 22.917(b)(1)(i) (1986). As evidence of the financial commitment it had obtained, PortCell submitted a letter of credit from NYNEX Credit Corp.
 
 
 6
 In 1989 the Commission agreed with Saco River and Northeast that PortCell's application was defective to the extent that the letter of credit did not include the terms of the proposed loan and failed to indicate that NYNEX Credit had assessed PortCell's creditworthiness. Nonetheless, the Commission waived the firm-financial-commitment requirement and granted the license to PortCell on the basis of the Commission's "lengthly [sic] experience in dealing with NYNEX Corporation and its various subsidiaries and affiliates." Portland Cellular Partnership, 4 FCC Rcd 2050, 2051 (1989).
 
 
 7
 In 1990 this court vacated that decision as arbitrary and capricious because the waiver of the firm-financial-commitment requirement "was not based on any rational waiver policy." Northeast Cellular Telephone Co., L.P. v. FCC, 897 F.2d 1164, 1167. Upon remand the Commission, finding that it could not justify the waiver, dismissed PortCell's application as defective. Portland Cellular Partnership, 6 FCC Rcd 2283 (1991).
 
 
 8
 The Commission also dismissed Saco River's application as defective because Saco River's proposed service contour extended beyond the Portland service area. The Commission determined that, because the proposed extension involved more than de minimis encroachments into adjacent service areas, Saco River would not be permitted to amend its filing to bring it into compliance with the applicable rules. Id. at 2284.
 
 
 9
 With PortCell and Saco River no longer in the running, the Commission designated Northeast as the tentative selectee. Id. Community filed a timely motion to reconsider. Nearly a year later PortCell filed its own petition to reconsider, arguing for the first time that the Commission had erred in dismissing its application because the firm-financial-commitment reporting requirement had not been approved by the Office of Management and Budget. The Paperwork Reduction Act, 44 U.S.C. § 3501 et seq., provides that "[a]n agency shall not conduct or sponsor the collection of information unless in advance of the adoption or revision of the collection of information ... the Director [of the OMB] has approved the proposed collection of information." 44 U.S.C. § 3507(a). The Commission responded that it had no authority to consider PortCell's petition because the petition was filed too late. Portland Cellular Partnership, 8 FCC Rcd 4146, 4146 n.4 (1993).
 
 
 10
 In 1993 the Commission denied Community's petition for reconsideration, id. at 4149-50, and granted Northeast's application over the objections of Saco River and PortCell, id. at 4150-52. PortCell filed a timely petition for reconsideration of the grant of Northeast's application. In addition, PortCell and Community filed petitions for further reconsideration of the dismissal of PortCell's application, with PortCell again raising its PRA objection.
 
 
 11
 In 1994 the Commission denied PortCell's and Community's petitions for further reconsideration of the order dismissing PortCell's application. In a somewhat different analysis than it had offered when it first denied PortCell's petition for reconsideration, the Commission explained that, because Community's original rehearing petition had been timely, the agency was free upon reconsideration thereof to entertain any relevant argument, including the PRA argument in PortCell's untimely petition. The Commission then declined to exercise its discretion to consider PortCell's "grossly untimely" PRA objection because
 
 
 12
 Port Cell's failure to avail itself of this argument when its compliance with [the Commission's] financial qualifications rule was first called into question imposed a particularly heavy burden on the resources of the court, the Commission and the other parties ... litigating the issue of Port Cell's compliance.
 
 
 13
 Portland Cellular Partnership, 9 FCC Rcd 3291, 3292 (1994). Meanwhile, the Commission deferred reconsideration of its grant of Northeast's application, id. at 3291 n. 2, and Northeast constructed a cellular system that has been operating in the Portland market since November 1994.
 
 
 14
 In 1995 the Congress added subsection (b) to the "public protection" provision of the PRA. The amended version provides:
 
 
 15
 (a) Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this chapter if--
 
 
 16
 (1) the collection of information does not display a valid control number assigned by the Director [of the OMB] in accordance with this chapter;....
 
 
 17
 (b) The protection provided by this section may be raised in the form of a complete defense, bar, or otherwise at any time during the agency administrative process or judicial action applicable thereto.
 
 
 18
 44 U.S.C. § 3512. PortCell then filed yet another petition for reconsideration, this time asserting that § 3512(b) requires the Commission to consider its PRA argument.
 
 
 19
 In 1996 the Commission agreed that because the administrative proceedings were still ongoing, the amended statute required it to consider PortCell's PRA defense. The Commission then determined that it had violated the PRA by dismissing PortCell's application on the basis of an unapproved request for information about financial commitments. Portland Cellular Partnership, 11 FCC Rcd 19997, 20001-06 (1996). Accordingly, the Commission allowed PortCell to amend its application to satisfy the firm-financial-commitment requirement, and PortCell submitted a 1995 letter of credit from Fleet Bank of Maine. Although this financial showing did not illuminate what commitment, if any, PortCell had obtained as of the time of its selection in 1986, the Commission accepted PortCell's amendment in satisfaction of the firm-financial-commitment requirement. The Commission thereupon rescinded its grant of the license to Northeast and awarded the license to PortCell. Id. at 20013. Upon the motion of Northeast, this court stayed the Commission's 1996 order pending judicial review.
 
 
 20
 Both Northeast and Saco River appealed. Because Saco River placed second behind PortCell in the lottery for the Portland license, however, we need consider Saco River's challenge to the dismissal of its application only if we determine that the Commission erred in awarding the license to PortCell.
 
 II. ANALYSIS
 
 21
 Northeast presents six arguments why the Commission erred when it revoked Northeast's license to serve the Portland market: (1) the Communications Act prevents the Commission from considering PortCell's belated argument invoking the PRA; the Commission's application of § 3512(b) of the PRA to this case (2) is an impermissible retroactive application of the new statute, and (3) reverses this court's 1990 decision in Northeast v. FCC, in violation of the separation-of-powers doctrine; (4) the lack of an OMB control number does not excuse PortCell's failure to comply with the statutory requirement to submit information to the Commission; (5) the OMB approved the firm-financial-commitment rule before it was "enforced" against PortCell; and (6) the firm-financial-commitment requirement is a substantive requirement for a license, not merely a collection of information. For the reasons detailed below, we reject all these arguments and affirm the Commission's 1996 order.
 
 
 22
 A. Did § 3512 Require the Commission to Consider PortCell's PRA Defense?
 
 
 23
 In the order under review the Commission acknowledged that "strong policy reasons" counseled against considering PortCell's PRA defense. 11 FCC Rcd at 20001. The Commission believed that it was required to do so, however, because it understood the 1995 amendments to the PRA as allowing any adversely affected person "to raise PRA violations without limitation, so long as the administrative or judicial process in connection with a particular license or with a particular application continues." Id. at 20003. We agree with that reading of the Act as amended.
 
 1. The Communications Act
 
 24
 According to Northeast, the Commission violated §§ 402(h) and 405(a) of the Communications Act when it considered PortCell's PRA defense. Section 402(h) requires the Commission, after a case has been remanded by this court, to give effect to our judgment "upon the basis of the proceedings already had and the record upon which [the] appeal was heard and determined." 47 U.S.C. § 402(h). Section 405(a) establishes a 30-day deadline for filing petitions for reconsideration. 47 U.S.C. § 405(a). The Commission responded to Northeast's argument as follows:
 
 
 25
 We are not waiving the financial qualification requirements for licensees in contravention of the court's mandate. Instead, we are considering whether the financial qualification requirement regulation is valid and enforceable under the PRA. Section 402(h) does not restrict us from doing so. In any event, Section 3512 of the PRA ... overrides any restriction 402(h) might place on our consideration of PRA issues in a proceeding on remand from a court.
 
 
 26
 11 FCC Rcd at 20005.
 
 
 27
 We need not address today what restrictions §§ 402(h) and 405(a) of the Communications Act impose when § 3512 of the PRA is not invoked. Because § 3512 of the PRA applies by its terms "notwithstanding any other provision of law," we agree with the Commission that § 3512 "simply trumps Section 405(a) and, to the extent it might be relevant, Section 402(h)." Id. at 20003; see Liberty Maritime Corp. v. United States, 928 F.2d 413, 416 (D.C.Cir.1991) (similar "notwithstanding" clause "supercede[s] all other laws").
 
 2. Retroactivity
 
 28
 Northeast argues that applying the PRA amendments to this case contravenes the principle that retroactivity is not favored in the law. As we recently noted, however, in determining whether a statute has retroactive effect it is necessary "to examine the temporal relationship between the statute and the activity the statute is meant to govern." Legal Assistance for Vietnamese Asylum Seekers v. Department of State, 104 F.3d 1349, 1352 (D.C.Cir.1997). Section 3512(b) requires that, from October 1, 1995 onward, agencies and courts entertain arguments that would otherwise have been barred either by a statute of limitations or by the proponent's failure to have made the argument at an earlier stage in the administrative or judicial process. In this case, the Commission had dismissed PortCell's PRA defense as untimely without ruling upon the merits of it; the PRA amendments merely required the Commission, when the issue was raised anew, to make that ruling. Because § 3512(b) governs only the conduct of litigation after the effective date of the statute and does nothing to reopen matters litigated before that date, it does not offend any norm against retroactive lawmaking.
 
 
 29
 Nor is a statute retroactive "merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." Landgraf v. USI Film Prods., 511 U.S. 244, 269, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994). By permitting parties to raise the PRA issue "at any time" in ongoing proceedings, the statute does not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." Id. at 280, 114 S.Ct. at 1505. Rather, it simply prevents an agency or court from refusing to consider a PRA argument on the ground that it is untimely.
 
 
 30
 We conclude that the Commission correctly interpreted the amended statute as requiring it to consider PortCell's PRA defense when that defense was raised in the ongoing proceedings upon remand.
 
 3. Separation of powers
 
 31
 Northeast argues that even if § 3512(b) can be applied to ongoing proceedings in other circumstances, its application in this case would effectively reverse our decision in Northeast v. FCC, in violation of the separation-of-powers doctrine as the Supreme Court interpreted it in Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). Plaut was a sequel to Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991), in which the Court had announced a new statute-of-limitations rule for certain securities fraud suits. The Congress had responded to the Lampf, Pleva decision by passing a law purporting to revive suits that had been dismissed in the wake of Lampf, Pleva, but the Court held in Plaut that, as an attempt by the Congress to reopen a final judgment, the new law was unconstitutional. 514 U.S. at 225, 115 S.Ct. at 1456. According to Northeast, application of § 3512(b) in this case would likewise nullify this court's determination in Northeast, which became final when PortCell failed to seek review in the Supreme Court, that the Commission "must disqualify" PortCell's application if the agency could adduce no rational waiver policy to support it. 897 F.2d at 1167.
 
 
 32
 Plaut is no bar to the application of § 3512 to the present case, however, because no party in Northeast raised, and we did not purport to resolve, the PRA issue. Nor did we render a final judgment terminating the case; rather we remanded it to the Commission for further proceedings. For the Commission and the court to apply § 3512 to this case after October 1, 1995, therefore, is merely to follow the rule, which the Supreme Court acknowledged in Plaut itself, that "each court, at every level, must 'decide according to existing laws.' " 514 U.S. at 227, 115 S.Ct. at 1457 (quoting United States v. The Schooner Peggy, 5 U.S. (1 Cranch) 103, 109, 2 L.Ed. 49 (1801)).
 
 
 33
 B. Did the Commission Violate the PRA?
 
 
 34
 The public protection provision of the PRA provides that "no person shall be subject to any penalty for failing to comply with a collection of information" that lacks a currently valid OMB control number. 44 U.S.C. § 3512(a). When PortCell filed its application, the Commission had not obtained OMB approval for the firm-financial-commitment filing requirement then codified at 47 C.F.R. § 22.917(b) (1986). Therefore, to the extent that § 22.917(b) mandated a collection of information, the Commission could not lawfully penalize PortCell for failing to comply with it.
 
 
 35
 Northeast makes three arguments for the proposition that § 3512 of the PRA does not prevent the Commission from punishing PortCell for failing to comply with § 22.917(b): First, the mandate to demonstrate a firm financial commitment originated with the Congress (as opposed to the Commission); therefore PortCell was obligated to comply with the filing requirement regardless of the Commission's failure to comply with the PRA. Second, the Commission's failure to comply with the PRA was at most harmless error because the Commission had obtained an OMB control number for § 22.917(b) by the time it penalized PortCell. Third, § 22.917(b) is a substantive legal requirement rather than a "collection of information" requirement. For the reasons set out below, we reject these three arguments and conclude that the Commission was obliged, as it held, to permit PortCell to amend its application in order to demonstrate that it had complied with § 22.917(b).
 
 1. Statutory obligation
 
 36
 Northeast contends that the requirement that an applicant demonstrate a firm financial commitment is a statutory obligation and therefore not subject to the PRA. The OMB's regulations clearly state that § 3512 "does not preclude the imposition of a penalty on a person for failing to comply with a collection of information that is imposed ... by statute," 5 C.F.R. 1320.6(e), and we shall assume that is a reasonable interpretation of the law.
 
 
 37
 As the OMB has explained, however, that principle "does not extend to situations in which a statute authorizes, or directs, an agency to impose a collection of information on persons, and the agency does so." Controlling Paperwork Burdens on the Public; Regulatory Changes Reflecting Recodification of the Paperwork Reduction Act, 60 Fed.Reg. 30438, 30441 (1995). That is all that has happened here. Section 308(b) of the Communications Act provides that "[a]ll applications for station licenses ... shall set forth such facts as the Commission by regulation may prescribe as to the ... financial ... qualifications of the applicant to operate the station." 47 U.S.C. § 308(b). The Commission duly required that each applicant submit information showing that it had a firm financial commitment. There is no collection of information imposed by statute, much less a specific congressional command to provide information showing a firm financial commitment. The Congress merely authorized, it did not require, the Commission to collect information regarding the financial qualifications of applicants for a license. Accordingly, the Commission must itself have complied with the PRA before it may enforce that information collection requirement under § 308 of the Communications Act.
 
 2. Harmless error
 
 38
 Northeast argues that the Commission's temporary failure to adhere to the PRA was harmless as far as PortCell is concerned. The OMB issued a control number for the firm-financial-commitment regulation in 1990, which was after the information was collected from PortCell but before the Commission dismissed PortCell's application (in 1991) for failure to comply with the regulation. Northeast reminds us that the PRA "does not prevent the promulgation of a rule, only its enforcement." Dithiocarbamate Task Force v. EPA, 98 F.3d 1394, 1405 (D.C.Cir.1996).
 
 
 39
 Northeast's argument loses sight of the Congress's purpose in enacting the PRA--to "minimize the paperwork burden for individuals, small businesses, educational and nonprofit institutions, Federal contractors, State, local and tribal governments, and other persons." 44 U.S.C. § 3501(1). In order to fulfill that purpose, the PRA must protect a member of the public when the agency imposes the paperwork burden upon it, not merely when the agency relies upon the paperwork in making a decision, which (as this case illustrates) can be years later. Therefore, an agency may not, having belatedly gotten OMB approval of an information collection requirement, punish a respondent for its faulty compliance while the collection was still unauthorized. Because § 22.917(b) lacked a control number when the Commission required that PortCell submit information about its financial commitment, the Commission could not punish PortCell for failing to submit the information it required.
 
 3. Not a collection of information
 
 40
 The regulation in force at the time PortCell became the tentative selectee required that a cellular applicant "obtain a firm financial commitment for the financing necessary to construct and operate for one year its proposed cellular system and amend its application to so demonstrate." 47 C.F.R. § 22.917(b)(1)(1986). Northeast submits that this regulation is not a "collection of information" within the meaning of the PRA because it requires the tentative selectee not merely to provide information about but actually to obtain a firm financial commitment. The Commission, on the other hand, considers the regulation to be a collection of information because the selectee must provide the Commission with evidence of the commitment.
 
 
 41
 Clearly enough the regulation imposes both a substantive and a reporting requirement. The selectee must obtain a firm financial commitment as a precondition to receiving a license, and it must amend its application to demonstrate that it has obtained the commitment. The latter requirement is a collection of information; therefore, the Commission may not punish a selectee for failing to provide the information unless it has first obtained a valid OMB control number.
 
 
 42
 In the present case the letter of credit from NYNEX Credit that PortCell submitted in 1986 was "incomplete because it failed to provide all of the evidence required by the regulation" and thus " 'failed to comply' with the requirement of the information collection." 11 FCC Rcd at 20007. The 1986 letter of credit did not, however, demonstrate that PortCell had failed to obtain the required firm financial commitment, and the Commission did not fault PortCell on that substantive ground. Therefore, this case involves PortCell's failure to comply with a collection of information that lacks an OMB control number and not, as Northeast would have it, PortCell's failure to fulfill an underlying substantive requirement. Accordingly, we have no occasion to decide whether the PRA prevents an agency from punishing a party for a failure to fulfill a substantive legal requirement that is brought to light only because that substantive requirement is also the subject of an information collection requirement.
 
 
 43
 C. Did the Commission Rely upon Inapposite Information in Granting the License to PortCell?
 
 
 44
 The OMB regulations implementing the PRA require that where, as here,
 
 
 45
 an agency has imposed a collection of information as a means for proving or satisfying a condition for the receipt of a benefit or the avoidance of a penalty, and the collection of information does not display a currently valid OMB control number ... [the agency must] permit respondents to prove or satisfy the legal conditions in any other reasonable manner.
 
 
 46
 5 C.F.R. § 1320.6(c). Hence, the Commission appropriately allowed PortCell to amend its application in order to demonstrate that it had obtained the firm financial commitment that is a prerequisite to receiving a license to provide cellular service.
 
 
 47
 We note that the Commission disqualified PortCell for want of evidence that PortCell had obtained a firm financial commitment as of 1986, while PortCell's amended application demonstrates only that it had obtained a firm financial commitment as of 1995; the amendment sheds no light upon what commitment, if any, PortCell had obtained in 1986. Cf., e.g., Pontchartrain Broadcasting Co. v. FCC, 15 F.3d 183, 184 (D.C.Cir.1994) ("In cases involving amendment of an applicant's initial financial certification, the Commission generally requires that the applicant also demonstrate that it had a reasonable assurance of financing at the time that it made its initial certification." (citing Aspen FM, Inc., 6 FCC Rcd 1602, 1603-04 (1991))). At oral argument Northeast responded to an inquiry from the court by arguing for the first time that the Commission erred in accepting PortCell's amendment because it failed to demonstrate that it had a firm financial commitment as of 1986. As the Commission correctly noted in its 1996 order, however, before the agency "Northeast [did] not oppose the amendment or argue that it is insufficient." 11 FCC Rcd at 20008. Because no one challenged the amendment as anachronous before the Commission, the agency did not have an opportunity to consider that charge. Therefore, the issue was neither preserved nor presented for our review, and we do not pass upon it. Cf. United States v. Tucker Truck Lines, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54 (1952) ("Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that court should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice"); Center for Auto Safety v. Peck, 751 F.2d 1336, 1360 (D.C.Cir.1985) ("Such an ambush at this late stage cannot be allowed").
 
 III. CONCLUSION
 
 48
 For the foregoing reasons we affirm the Commission's order rescinding the grant of the Portland, Maine Block B cellular license to Northeast, reinstating PortCell's application, and granting the license to PortCell. Accordingly, we vacate our order of March 10, 1997 staying the Commission's order, and we dismiss as moot Saco River's challenges to the Commission's handling of its application for a cellular license.
 
 
 49
 It is so ordered.