**James A. CASSELL and Kelley Communications, Inc., Petitioners,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents.**

**Potomac Corporation, d/b/a Crescent Communications, Intervenor.**

No. 97–1005.
Consolidated with No. 97–1006.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 3, 1997.

Decided Sept. 11, 1998.

---

Dennis C. Brown argued the cause for petitioners, with whom Sydney L. Steele was on the briefs. Lewis J. Paper and Robert H. Schwaniger, Jr. entered appearances.

Nancy L. Kiefer, Counsel, Federal Communications Commission, argued the cause for respondents, with whom William E. Kennard, General Counsel at the time the brief

was file, and Daniel M. Armstrong, Associate General Counsel, were on the brief.

Before: SILBERMAN, WILLIAMS and GARLAND, Circuit Judges.

Opinion of the Court filed by Circuit Judge GARLAND.

GARLAND, Circuit Judge:

■ Petitioners in these consolidated cases contend that the Federal Communications Commission ("FCC") improperly denied their requests for "finder's preferences" regarding certain private mobile land radio stations. We find no infirmity in the FCC's decisions and deny the petitions for review.[1]

## I

The FCC regulates the licensing of portions of the broadcast spectrum used to provide one- and two-way communications services known as private land mobile radio services. *See* 47 U.S.C. § 332 (1994 & Supp. 1998). These services include trunked specialized mobile radio ("trunked SMR") systems, which operate over several frequencies by means of centralized stations that send and receive communications between mobile radio units. *See* 47 C.F.R. § 90.7. An applicant for a license to operate a trunked SMR system must specify both the street address and the geographic coordinates (longitude and latitude), to the nearest second, from which it will operate the station. *See, e.g.,* Joint Appendix ("J.A.") at 11; *see also* FCC 574, Application for General Mobile Radio Service at 2 (Mar.1998).

In 1991, after providing notice and an opportunity for comment, the FCC adopted a finder's preference program applicable to, inter alia, trunked SMRs on certain frequency bands. *See In re Amendment of Parts 1 and 90 of the Commission's Rules Concerning the Construction, Licensing, and Operation of Private Land Mobile Radio Stations,* 6 F.C.C.R. 7297, 7302–09 (1991) ("*Report and Order*").[2] The program was a response to the increased demand for, and resulting scarcity of, these frequencies. Because of that scarcity, it was "becoming difficult for new applicants to become licensed or for existing licensees to expand their systems." *Id.* at 7303. The purpose of the finder's preference program was to create "new incentives for persons to provide [the FCC] information about unconstructed, nonoperational, or discontinued private land mobile radio systems...." *Id.* at 7309. The program, the FCC said, "would enhance spectrum efficiency by identifying more unused channels and reassigning them to persons who will use them effectively." *Id.*

Under the finder's preference program, if an applicant presents the FCC with evidence that leads to the cancellation of a license due to the licensee's noncompliance with certain regulations, the applicant is entitled to seek a dispositive preference for the recovered frequencies. *See* 47 C.F.R. § 90.173(k); *see also Keller Communications, Inc. v. FCC,* 130 F.3d 1073, 1075 (D.C.Cir.1997). A finder, however, must be independently eligible for a license for the frequencies in question, *see* 47 C.F.R. § 90.173(k), and the FCC retains the "right to assure that the awarding of the preference is in the public inter-

---

1. Petitioners filed notices of appeal under 47 U.S.C. § 402(b)(1), rather than petitions for review under § 402(a). Four days after the notices were filed, we decided *Freeman Engineering Associates v. FCC,* 103 F.3d 169 (D.C.Cir.1997), in which we held that the FCC's denial of an application for a "pioneer's preference" is reviewable under § 402(a) rather than § 402(b)(1). *See id.* at 176–77. In light of *Freeman,* all parties now agree that our jurisdiction over these cases arises under § 402(a). *See* FCC Br. at 3; Petitioners' Reply Br. at 1 n.1. Given the similarity between the two FCC preference programs, we agree as well. Accordingly, we will treat the notices of appeal as petitions for review, and will refer to the parties here as "petitioners."

2. Due to changes in the way it now awards licenses, the Commission has since discontinued the finder's preference program for the 800 and 900 MHz SMR spectrum, proposed eliminating the program for services in the 220–222 MHz spectrum, and suggested the possibility of eliminating it for all services. *See generally In re Amendment of Part 90 Concerning the Commission's Finder's Preference Rules,* 11 F.C.C.R. 13,-016, 13,019–22 (1996). These changes, which apply only prospectively, do not affect the petitions for review currently before this court.

est. . . ." *Report and Order*, 6 F.C.C.R. at 7303 n. 64.

The FCC limited the finder's preference program to those "rule violations which lend themselves to conclusive and expeditious action." *Id.* at 7305. Pre-existing FCC regulations made subject to the finder's program include the requirement that a licensee of a trunked SMR facility complete station construction, *see* 47 C.F.R. § 90.631(e), and place the station "in permanent operation, in *accordance* with the technical parameters of the station authorization," generally within one year, *id.* § 90.631(f) (emphasis added). *See id.* § 90.173(k); *Report and Order*, 6 F.C.C.R. at 7305. In the *Report and Order* in which it adopted the program, the FCC declared that it would "continue to apply [these] existing rules," rather than modify them, but would "now enforce these rules" as follows: "Construction of the base station must be in *substantial accordance* with the parameters specified in the station authorization (e.g., authorized antenna height). All channels not so 'constructed' will be recovered from the licensee." *Id.* at 7299 (emphasis added). The FCC did not define the term "substantial accordance."

Between 1991 and 1993, the FCC's Wireless Telecommunications Bureau (formerly known as the Private Radio Bureau, and hereinafter referred to as "the Bureau") granted approximately 75 finder's preferences in instances where a licensee had failed to construct or operate its station in a timely fashion or had discontinued operations. *See* FCC Br. at 8 n.7. On January 11, 1994, the Bureau's Licensing Division ruled for the first time on a preference request based on a licensee's failure to construct its station at its licensed coordinates. In that case, *In Re Fred B. Lott*, the existing licensee had constructed its SMR station more than five miles from the location at which it was licensed. *See* 9 F.C.C.R. 225 (1994). The Division canceled the license and awarded a finder's preference. Citing the *Report and Order*, the Division noted that "failure to construct in *substantial accordance* with li-

censed parameters results in automatic cancellation of a license," and concluded that a five-mile deviation was not in "substantial accordance." *Id.* at 225 (emphasis added). The Division distinguished an earlier case in which the Bureau purportedly had permitted a station operating one-fifth of a mile from its authorized coordinates to remain licensed, saying that the "distances are not comparable." *Id.* And it declared that "[a]s a rule of thumb, construction more than one second, (60 feet), away from the licensed location is not in *accordance* with the station's authorization." *Id.* (emphasis added).[3]

On March 11, 1994, petitioner Lawrence Vaughn filed a finder's preference request for the license held by Ross and Barbara Shade to operate SMR Station WNXE819 in Sherman Oaks, California. Vaughn alleged that the Shades had violated the trunked SMR construction rule, 47 C.F.R. § 90.631(f), because the station was located 3100 feet (just over 1/2 mile) from the coordinates specified in the license. The Shades responded that the discrepancy was inadvertent: the street address listed on the license was correct, but they had relied on the coordinates licensed to the previous operator of the station at the site. On August 18, 1994, the Bureau's Licensing Division denied Vaughn's finder's preference request, ruling that the Shades were in "substantial accordance" with the conditions of their license. *See In re Lawrence E. Vaughn, Jr.*, 9 F.C.C.R. 4438, 4438–39 (1994). At the same time, the Division concluded that it should no longer decide "substantial accordance" on a case-by-case basis, and instead adopted the following benchmark: "With respect to a variance from authorized coordinates, absent unique circumstances, we will only award a finder's preference for a constructed and operating station when a finder demonstrates that the authorized coordinates are more than 1.6 kilometers (one mile) from the actual location of the station." *Id.*

The other applications at issue in these cases were filed in May 1994, by James

---

**3.** As petitioner Vaughn pointed out below, *see* J.A. at 77, one second of latitude is actually the equivalent of approximately 100 feet, while the length of one second of longitude varies depend-

ing upon one's proximity to the earth's poles. *See also* 7 The New Encyclopaedia Britannica 184 (15th ed.1994).

Cassell and Kelley Communications. The two applicants filed nearly identical finder's preference requests for SMR Station KNEW202 in Golden, Colorado. The requests alleged that the station antenna was 639 feet away from its licensed coordinates. As in *Vaughn*, the existing licensee did not dispute the discrepancy, but noted that the street address was correct. On May 11, 1995, the Bureau denied the requests for finder's preferences, concluding that a discrepancy of 639 feet was de minimis. *See* J.A. at 196.

Cassell, Kelley Communications, and Vaughn all filed applications for review with the Commission. Each argued that the decision in *Lott* had established one second or 60 feet as the definition of "substantial accordance," and that under this definition the target licensee was not in substantial accordance with its authorized coordinates.

On December 4, 1996, the FCC denied the three applications for review. *See In re James A. Cassell*, 11 F.C.C.R. 16,720 (1996). The Commission noted that the *Report and Order* indicated frequencies would be recovered from licensees only if their stations were not constructed in "substantial accordance" with their authorized parameters. *See id.* at 16,723. It had never previously defined "substantial accordance," the Commission said, but instead had determined its meaning on a case-by-case basis. *See id.* Contrary to petitioners' contention, it said the Bureau also had not previously defined "substantial accordance." The one-second standard in *Lott*, the FCC held, "describes a situation where exact accordance with a licensee's authorization is not met, rather than defining substantial accordance." *Id.*

The FCC agreed that some benchmark definition of "substantial accordance" would "enhance the overall effectiveness and efficiency of our finder's program." *Id.* at 16,-725. It rejected the one-second definition advocated by petitioners as "unnecessarily restrictive." *Id.* at 16,724. As the FCC explained, the principal motivation for the finder's preference program was "to facilitate capturing *unused* channels so that licensing opportunities could be provided in those areas where there is limited available spec-

trum." *Id.* (emphasis added). The program should not be used "as a means to disrupt service being provided to the public by alleging license cancellation based on minor variations from authorized parameters." *Id.*

After rejecting petitioners' one-second standard, the FCC concluded that it should instead adopt the 1.6–kilometer definition used by the Bureau in the *Vaughn* case. "[T]his benchmark," the Commission determined, "is consistent with a variety of relevant factors including: the range of private land mobile radio systems, our experience with the accuracy of systems currently licensed, and the type of violation which evidences an inappropriate disregard for the requirements of our rules." *Id.* The FCC also noted that "a 1.6 kilometer benchmark has been used successfully in the context of geographic coordinates near certain mountain peaks," *id.* at 16,724 n. 21—that is, under one FCC regulation, a station within 1.6 kilometers of a mountain peak is considered to be at the peak. *See* 47 C.F.R. § 90.621(b).

Finally, the FCC said that it would regard the 1.6–kilometer measure as a benchmark and not an absolute. It recognized that there may be situations where variances below 1.6 kilometers are not "minor," for example when they jeopardize air safety or when a licensee "knowingly constructed at another site for purposes of changing its station's coverage footprint." *See* 11 F.C.C.R. at 16,-724. The 1.6–kilometer benchmark, the Commission said, would "provide potential filers of finder's preference requests guidance regarding their burden of proof." *Id.* at 16,725. For variations of less than 1.6 kilometers, finder's preferences still would be possible, but applicants would have the burden of demonstrating why a particular variance is not minor. The FCC concluded that the benchmark, together with this qualifier, would provide "a rational standard that fosters continued provision of service to the public rather than requiring disruption of service through cancellation of licenses for minor errors in location of stations. . . ." *Id.* at 16,724.

Applying its new benchmark, the Commission concluded petitioners had failed to establish that the target licensees were not in

"substantial accordance" with their authorized coordinates. Accordingly, it denied their applications for review.

## II

Petitioners contend that the FCC's denial of their finder's preference requests violated fundamental principles of administrative law, in four ways. They argue that the FCC: (1) failed to follow its own precedents and rules; (2) failed to provide a rational explanation for its decision; (3) adopted what amounts to a substantive rule without providing notice or opportunity for comment; and (4) unlawfully applied its new benchmark retroactively.[4] We consider these arguments in turn.

## A

Petitioners contend that the 1.6–kilometer benchmark announced by the FCC departs from the one-second standard announced in *Lott.* They also contend that the new benchmark contradicts 47 C.F.R. § 90.173(k), the regulation governing the finder's preference program, and 47 C.F.R. § 90.631(f), the underlying regulation that mandates cancellation of a license "[i]f a station is not placed in permanent operation, in *accordance* with the technical parameters of the authorization . . . ." *Id.* (emphasis added). Citing our opinion in *Reuters, Ltd. v. FCC,* 781 F.2d 946 (D.C.Cir.1986), petitioners contend this failure to follow the agency's own precedents and rules violates a basic requirement of rational decision-making.

As noted above, the FCC does not regard its decision as departing from the one-second standard for "substantial accordance" set in *Lott,* because it does not regard *Lott* as setting any such standard. Instead, the

FCC reads *Lott* as setting one second as a standard defining exact "accordance" for purposes of license applications and authorizations, "rather than defining substantial accordance" for purposes of the finder's preference program. *Cassell,* 11 F.C.C.R. at 16,723.

An agency's interpretation of its own precedent is entitled to deference, *see Inland Lakes Management, Inc. v. NLRB,* 987 F.2d 799, 805 (D.C.Cir.1993), and the FCC's reading of *Lott,* which distinguishes between "accordance" and "substantial accordance," is a reasonable one. *Lott* itself used these two verbal formulations. It referred to the one-second standard as a rule of thumb for determining when a station is located in "accordance" with its authorization, but said that a station deviating by more than five miles was not in "substantial accordance" with its authorization. The FCC's reading is further supported by the way in which *Lott* itself distinguished an earlier Bureau decision to tolerate a station's onefifth mile deviation. If petitioners' reading of *Lott* were correct, the one-fifth of a mile deviation should have led to license cancellation because the location was not in "substantial accordance." Instead, *Lott* indicated it would tolerate such a deviation, a result consistent with the FCC's view that although not in "accordance," a deviation of one-fifth of a mile remains in "substantial accordance." The three situations *Lott* considered describe a continuum that is consistent with the FCC's reading: a one-second deviation is in "accordance" with parameters, a one-fifth of a mile deviation is in "substantial accordance," and a five-mile deviation is in neither "accordance" nor "substantial accordance." [5]

---

4. Although petitioners do not say so expressly, their first, second, and fourth arguments ultimately are founded upon the requirement of the Administrative Procedure Act ("APA") that agency action not be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Their third argument is based on the APA's requirement that, with certain exceptions (including an exception for interpretive rules), agencies must provide "[g]eneral notice of proposed rulemaking," *id.* § 553(b), and an opportunity for interested persons "to participate in the rulemaking through

submission of written data, views, or arguments," *id.* § 553(c).

5. In their brief, FCC counsel also contended that even if the Commission had departed from *Lott,* such a departure would be of no consequence because the Commission is not constrained "in any way" by the decisions of a subordinate division. FCC Brief at 29. As the Commission itself did not rely on such a contention in its opinion below, we will not consider it here. *See Burlington Truck Lines v. United States,* 371 U.S. 156, 168, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962); *Securities & Exchange Comm'n v. Chenery Corp.,* 332

In addition to *Lott*, petitioners rely on 47 C.F.R. §§ 90.173(k) and 90.631(f) to argue that the Commission contravened its own regulations by adopting a 1.6–kilometer benchmark. Section 90.173(k), petitioners point out, states that a person may seek a finder's preference by providing information "regarding the failure of existing licensees to comply with the provisions" of § 90.631(f). And § 90.631(f) provides that "[i]f a station is not placed in permanent operation, in *accordance* with the technical parameters of the station authorization, within one year, . . . its license cancels automatically and must be returned to the Commission." Since section 90.631(f) refers to "accordance" rather than "substantial accordance," and since the technical parameters of a station's authorization include geographical coordinates listed to the second, petitioners insist there is no room for a reading that permits a target licensee to defeat a finder's preference by merely being in "substantial accordance."

■ In its opinion below, the FCC interpreted its own regulations differently than petitioners do, and we are bound to defer to that interpretation unless it is " 'plainly erroneous or inconsistent with the regulation.' " *Auer v. Robbins*, 519 U.S. 452, 117 S.Ct. 905, 911, 137 L.Ed.2d 79 (1997); *see also Freeman Eng'g Assocs. v. FCC*, 103 F.3d 169, 178 (D.C.Cir.1997). The FCC read the *Report and Order* that established the finder's program as indicating that stations would be recovered from their licensees only if they were not "in 'substantial accordance' with the parameters specified in the station authorization." *Cassell*, 11 F.C.C.R. at 16,723 (quoting *Report and Order*, 6 F.C.C.R. at 7299). This is the same conclusion the Bureau reached in *Lott*, the opinion upon which petitioners rely. There, citing the *Report and Order*, the Bureau noted that "failure to construct in *substantial accordance* with licensed parameters results in automatic cancellation of a license. . . ." *Lott*, 9 F.C.C.R. at 225 (emphasis added).

The FCC's interpretation follows logically from the language of the *Report and Order*.

U.S. 194, 196, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). In any event, FCC counsel abandoned

In the *Report*, the FCC declared that it would "continue to apply" § 90.631(f), but would do so subject to a new standard of enforcement: "Construction of the base station must be in *substantial accordance* with the parameters specified in the station authorization. . . . All channels not so 'constructed' will be recovered from the licensee." *Id.* (emphasis added). That declaration supports the FCC's view that a finder's preference is unwarranted unless a station is not in "substantial accordance" with its licensed parameters, and that the "substantial accordance" enforcement standard describes a larger margin of error than the exact "accordance" required by the underlying rule.

Because the FCC's interpretation of its own regulations is reasonable, we defer to it. And because under that interpretation the decision below does not depart from those regulations, we find no inconsistency in the Commission's actions.

**B**

■ Petitioners' second contention is that the FCC adopted the 1.6–kilometer standard without providing a reasoned explanation that rationally relates the standard to the finder's program's purposes and the agency's statutory obligations. We agree that a rational explanation is required to support agency decision-making, *see, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983), but find the explanation offered by the FCC to be perfectly reasonable.

First, the FCC concluded that deciding on a benchmark definition of "substantial accordance," rather than continuing to apply the term on a case-by-case basis, would enhance the overall effectiveness of the finder's program. *See Cassell*, 11 F.C.C.R. at 16,724. Petitioners do not dispute the reasonableness of that conclusion; to the contrary, they tout their own preferred benchmark and disparage the alternative of case-by-case adjudica-

this contention during oral argument.

tion as inappropriately "subjective." Petitioners' Br. at 17.

Second, the FCC concluded that petitioners' proposed one second standard would be "unnecessarily restrictive." *Cassell,* 11 F.C.C.R. at 16,724. That threshold, the FCC predicted, would "disrupt service being provided to the public ... based on minor variations from authorized parameters." *Id.* Such a result would be inconsistent with the program's purpose of "enhanc[ing] spectrum efficiency by identifying more *unused* channels...." *Report and Order,* 6 F.C.C.R. at 7309 (emphasis added). Indeed, unlike the revocation of a license for failing to construct a station, revocation for operating at a slight variance does little to fulfill the program's underlying purpose of mitigating the problem of spectrum scarcity.

Third, the FCC concluded that a 1.6–kilometer benchmark would serve the program's goal of motivating finders, without needlessly disrupting ongoing service for minor deviations. The petitioners charge that there is no "rational basis" for choosing 1.6 kilometers over any other distance. But the FCC did offer plausible reasons. It found the 1.6–kilometer benchmark reasonable in relation to the normal range of private land mobile radio systems, which is generally at least 20 miles. *See* 47 C.F.R. § 90.635. It found the benchmark consistent with the Commission's own experience with the accuracy of systems currently in operation. And it concluded that a 1.6–kilometer benchmark was large enough to "evidence[ ] an inappropriate disregard for the requirements of our rules"—for example, an intention to change the station's coverage footprint from that which was authorized—rather than a mere inadvertent error. *Cassell,* at 16,724. Finally, the Commission noted that the same benchmark had been "used successfully in the context of geographic coordinates near mountain peaks." *Id.* at 16,724 n. 21 (citing 47 C.F.R. § 90.621(b)).

We are generally "unwilling to review line-drawing performed by the Commission unless a petitioner can demonstrate that lines drawn ... are patently unreasonable, having no relationship to the underlying regulatory problem." *Home Box Office, Inc. v. FCC,* 567 F.2d 9, 60 (D.C.Cir.1977). Here, the FCC has provided a reasonable explanation for the line it has drawn, and demonstrated that line's relationship to the underlying regulatory problem addressed by the finder's preference program. It is also a line that is consistent with the Commission's statutory obligation to "manage the spectrum to be made available for use by the private land mobile services" in a manner that will "improve the efficiency of spectrum use and reduce the regulatory burden upon spectrum users." 47 U.S.C. § 332(a)(2).

## C

▮ Petitioners' third contention is that, by defining "substantial accordance" through a benchmark, the FCC effectively adopted a substantive rule. Under the Administrative Procedure Act, an agency may adopt such a rule only after providing notice and an opportunity for interested parties to comment. *See* 5 U.S.C. § 553. Since the FCC did not follow such rulemaking procedures here, petitioners contend the FCC's decision should be invalidated.

This argument, however, comes too late. Section 405(a) of the Federal Communications Act requires that the Commission be given an "opportunity to pass" on a question of fact or law before a petitioner may bring it to this court. 47 U.S.C. § 405(a); *see Time Warner Entertainment Co. v. FCC,* 144 F.3d 75, 79 (D.C.Cir.1998); *Bartholdi Cable Co. v. FCC,* 114 F.3d 274, 279 (D.C.Cir.1997). Petitioners knew full well that the Commission would address the 1.6–kilometer benchmark, since the Bureau had adopted that benchmark in the proceeding below. Nonetheless, they failed to argue before the Commission that a benchmark could not be adopted without notice and comment rulemaking. To the contrary, petitioners argued that the Commission had already adopted a valid benchmark through the decision in *Lott* which, like this case, was an adjudication rather than a rulemaking. By failing to give the Commission an opportunity to consider this argument, petitioners have precluded review in this court.

■ Petitioners' argument is, in any event, without merit. The FCC's interpretation of "substantial accordance" arose in the context of an adjudication of petitioners' applications for finder's preferences. It is well settled that an agency "is not precluded from announcing new principles in an adjudicative proceeding...." *NLRB v. Bell Aerospace Co.*, 416 U.S. 267, 294, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974). Rather, "the choice between rulemaking and adjudication lies in the first instance within the [agency's] discretion." *Id.; see also Securities & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947); *City of Orrville v. FERC*, 147 F.3d 979, 988 n. 11 (D.C.Cir.1998).

**D**

■ Finally, petitioners contend that the FCC acted unlawfully by applying the 1.6–kilometer benchmark retroactively to their finder's preference requests. They urge us to analyze that retroactive application under the five-factor test set forth in *Clark–Cowlitz Joint Operating Agency v. FERC*, which we have used as the "framework for evaluating retroactive application of rules announced in agency adjudications." 826 F.2d 1074, 1081 (D.C.Cir.1987) (en banc).[6] Petitioners contend that the retroactive application of the 1.6–kilometer benchmark fails to survive that test.

There is no need to plow laboriously through the *Clark–Cowlitz* factors here. As we said in that case, the test's factors "boil down ... to a question of concerns grounded in notions of equity and fairness." *Id.* at 1082 n. 6. Indeed, that is the gravamen of petitioners' complaint: it is unfair, they say, to apply the new 1.6–kilometer benchmark to their requests when the preexisting one-second benchmark is one they readily meet. But since we already have concluded that

there was no such preexisting benchmark, most of the force has gone out of petitioners' appeal to fairness.

To flesh it out, petitioners' fairness argument is that, in reasonable reliance on *Lott*'s one-second rule, they hired surveyors to identify target licensees and lawyers to file their finder's preference requests. Under the one-second rule, petitioners contend, they were entitled to finder's preferences. If the FCC is permitted to apply the new 1.6–kilometer benchmark, they will have borne the burden of those expenses for nothing.

If the petitioners truly did rely on a one-second benchmark, that reliance was badly misplaced and hence inappropriate for consideration under *Clark–Cowlitz*. *See id.* at 1084 (noting that reliance must be reasonable). There was no "well established practice" supporting a one-second benchmark. *See id.* at 1083. To the contrary, the *status quo ante* was not a benchmark at all, but rather a case-by-case assessment with a highly uncertain outcome. *See, e.g., Lott*, 9 F.C.C.R. at 225; *Cassell*, 11 F.C.C.R. at 16,-723–24 & nn. 15–17. Indeed, *Lott* was the first finder's preference case to involve a deviation from geographic coordinates, and the *Lott* opinion was released only two months before petitioner Vaughn filed his preference application and only four months before petitioners Cassell and Kelley Communications filed theirs. Moreover, as the *Report and Order* made clear, the FCC always retained the "right to review preference requests to assure that the awarding of the preference [was] in the public interest...." *Report and Order*, 6 F.C.C.R. at 7303 n. 64. In short, petitioners' expenditure of funds on lawyers and surveyors was a gamble; it was not a sure bet. *See Clark–Cowlitz*, 826 F.2d at 1084 ("Although hope springs eternal, hope is no surrogate for reliance.").

---

**6.** Quoting our earlier opinion in *Retail, Wholesale & Department Store Union v. NLRB*, 466 F.2d 380, 390 (D.C.Cir.1972), *Clark–Cowlitz* set forth the following, non-exhaustive list of relevant factors:

(1) whether the particular case is one of first impression, (2) whether the new rule represents an abrupt departure from well-established practice or merely attempts to fill a void

in an unsettled area of law, (3) the extent to which the party against whom the new rule is applied relied on the former rule, (4) the degree of the burden which a retroactive order imposes on a party, and (5) the statutory interest in applying a new rule despite the reliance of a party on the old standard.

*Clark–Cowlitz*, 826 F.2d at 1081.

If there were any parties in these cases who did have a reasonable reliance interest, they were the existing licensees rather than the petitioners. As the Commission's opinion suggests, the licensees had been operating their stations for years at what they thought, apparently in good faith, were the correct geographic coordinates. As far as the record reflects, no operator had ever before lost a license based on a deviation as small as those at issue here. Moreover, while petitioners' investment in surveyors and legal fees was minor, the burden the existing licensees would bear if the FCC revoked their licenses would be great. *See id.* As the Bureau's Licensing Division noted in making a similar point, "construction costs associated with a trunked Specialized Mobile Radio Station can amount to hundreds of thousands of dollars." *Vaughn,* 9 F.C.C.R. at 4439.

In sum, because there is no evidence of the kind of "manifest injustice" that would counsel against retroactive application of the 1.6–kilometer benchmark, *Clark–Cowlitz,* 826 F.2d at 1081, petitioners' final attack on the denial of their preference requests falls short of the mark.

### III

For the foregoing reasons, the petitions for review [7] are denied.