# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 22, 2004            Decided June 14, 2005

No. 03-1439

MINNESOTA CHRISTIAN BROADCASTERS, INC.,
APPELLANT

v.

FEDERAL COMMUNICATIONS COMMISSION,
APPELLEE

CAROL DE LA HUNT,
INTERVENOR

———

Appeal of an Order of the
Federal Communications Commission

———

Matthew H. McCormick argued the cause for appellant. With him on the briefs was Dennis F. Begley.

Pamela L. Smith, Counsel, Federal Communications Commission, argued the cause for appellee. With her on the brief were John A. Rogovin, General Counsel, and Daniel M. Armstrong, Associate General Counsel.

Before: EDWARDS, SENTELLE, and GARLAND, Circuit Judges.

Opinion for the court filed by *Circuit Judge* GARLAND.

GARLAND, *Circuit Judge*: The winner of a Federal Communications Commission auction for a construction permit for a new FM radio station appeals from the Commission's refusal to award it a bidding credit available to new entrants into broadcasting. We affirm the refusal because the Commission's determination that the appellant is not a new entrant rests upon a reasonable interpretation of its own regulations.

I

The Federal Communications Commission (FCC) grants licenses and construction permits for broadcast radio stations. When the Commission receives license or permit applications that are mutually exclusive (such as applications for the same frequency in the same area), the Communications Act requires it to choose among them by using a competitive bidding process. *See* 47 U.S.C. § 309(j)(1).[1] Congress instructed the Commission to design its bidding rules with an eye toward "avoiding excessive concentration of licenses and . . . disseminating licenses among a wide variety of applicants," *id.* § 309(j)(3), and the Commission responded by granting bidding credits to "new entrants" -- those "holding no or few mass media licenses,"

---

[1] In this case, the appellant submitted its application on June 1, 1995. Although the Communications Act requires the Commission to use competitive bidding to select among mutually exclusive applications filed after July 1, 1997, it also authorizes the Commission to do so for mutually exclusive applications filed prior to that date. *See* 47 U.S.C. § 309(j)(1), 309(*l*)(1). The Commission chose to exercise that authority, thus triggering the auction in which the appellant took part. *See Implementation of Section 309(j) of the Communications Act -- Competitive Bidding for Commercial Broadcast and Instructional Television Fixed Service Licenses*, 13 F.C.C.R. 15,920, ¶¶ 34-59 (Aug. 18, 1998).

*Implementation of Section 309(j) of the Communications Act -- Competitive Bidding for Commercial Broadcast and Instructional Television Fixed Service Licenses*, 13 F.C.C.R. 15,920, ¶ 189 (Aug. 18, 1998).

Minnesota Christian Broadcasters, Inc. (MCBI) and two other parties each submitted construction permit applications for an FM station to operate on Channel 261A in Pequot Lakes, Minnesota. In the ensuing auction, which ended in October 1999, MCBI submitted the high bid and was declared the winner. MCBI's bid also sought a new entrant bidding credit (NEBC) -- notwithstanding that MCBI was already the owner of three other FM broadcast stations, including one in Pequot Lakes itself. MCBI believed it was eligible for the credit because its other stations were noncommercial educational stations (NCEs), and because it read the Commission's rules as excluding such stations for the purpose of determining whether a bidder is a new entrant.

Carol De La Hunt, another bidder for the Pequot Lakes construction permit (and an intervenor in this case), filed a petition to deny MCBI's post-auction application for the permit, partly on the ground that MCBI's noncommercial educational stations rendered it ineligible for treatment as a new entrant.[2] The FCC's Mass Media Bureau denied De La Hunt's petition. On review, however, the Commission held that MCBI's ownership of noncommercial educational stations, particularly the one in Pequot Lakes, made it ineligible for a new entrant

---

[2]Hunt also argued that MCBI's application should be denied on the ground that MCBI was not financially qualified. Mem. Op. & Order, *Application of Minnesota Christian Broadcasters, Inc.*, 18 F.C.C.R. 614, 614 (Jan. 17, 2003). The FCC rejected that argument, and this court upheld the Commission's decision in *De La Hunt v. FCC*, 88 Fed. Appx. 418 (D.C. Cir. 2004) (unpublished opinion).

bidding credit. The FCC permitted MCBI to retain the construction permit, but required it to pay the balance of its gross winning bid without deduction for the credit. *See* Mem. Op. & Order, *Application of Minnesota Christian Broadcasters, Inc.*, 18 F.C.C.R. 614, 619 (Jan. 17, 2003). MCBI now appeals to this court.

## II

MCBI contends that we must overturn the FCC's decision because the Commission failed to follow its own rules regarding the attribution of ownership interests in the context of the new entrant bidding credit. Whether the FCC followed its rules depends, of course, on what those rules mean. And as we have said many times, "we defer to an agency's reading of its own regulation, unless that reading is 'plainly erroneous or inconsistent with the regulation.'" *United States Air Tour Ass'n v. FAA*, 298 F.3d 997, 1005 (D.C. Cir. 2002) (quoting *Auer v. Robbins*, 519 U.S. 452, 461 (1997)).[3] Thus, the only question for us is whether the FCC's interpretation of its bidding credit rules satisfies that test.

Section 73.5007(a) of the FCC's rules sets forth the eligibility standards for the new entrant bidding credit as follows:

---

[3]*Accord Entergy Servs. v. FERC*, 375 F.3d 1204, 1209 (D.C. Cir. 2004) (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)); *Secretary of Labor, Mine Safety & Health Admin. v. Excel Mining, LLC*, 334 F.3d 1, 6 (D.C. Cir. 2003) (quoting *Akzo Nobel Salt, Inc. v. FMSHRC*, 212 F.3d 1301, 1303 (D.C. Cir. 2000) (quoting *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512 (1994))).

A thirty-five (35) percent bidding credit will be given to a winning bidder if it . . . [has] no *attributable interest in any other media of mass communications, as defined in § 73.5008*. A twenty-five (25) percent bidding credit will be given to a winning bidder if it . . . [has] an attributable interest in no more than three mass media facilities. No bidding credit will be given if any of the commonly owned mass media facilities serve the same area as the proposed . . . broadcast station . . . . Attributable interests held by a winning bidder in existing low power television, television translator or FM translator facilities will not be counted among the bidder's other mass media interests in determining eligibility for a bidding credit.

47 C.F.R. § 73.5007(a) (emphasis added). As the italicized phrase indicates, we must turn to § 73.5008 for the meaning of both "media of mass communications" and "attributable interest." The first is straightforward: section 73.5008(b) defines "medium of mass communications" as "a daily newspaper; a cable television system; or a license or construction permit for a television broadcast station, an AM or FM broadcast station, a direct broadcast satellite transponder, or a Multipoint Distribution Service station." *Id.* § 73.5008(b). There is no dispute that MCBI's existing FM stations fall within that definition.

Determining the meaning of "attributable interest," however, requires another detour. Section 73.5008 does not itself define the term, but instead provides that an "attributable interest in a winning bidder or in a medium of mass communications shall be determined in accordance with § 73.3555 and Note 2." *Id.* § 73.5008(c) (emphasis omitted). The text of the referenced section, § 73.3555, sets forth the Commission's "multiple ownership" rules, which, for example, limit the number of radio and/or TV stations a party may own in

the same market. *See, e.g.*, *id.* § 73.3555(a), (c). The multiple ownership rules, themselves, are not relevant to this case. Note 2 to § 73.3555, however, articulates the criteria by which "ownership and other interests in [media entities] will be attributed to their holders" for purposes of the multiple ownership rules. *Id.* § 73.3555 note 2. For example, note 2 states that, in general, the owner of 5% or more of the voting stock of a broadcast station has an attributable interest in that station. *See id.* § 73.3555 note 2(a). There is no dispute that if note 2's attribution rules apply to MCBI's stations for purposes of bidding credit eligibility, those stations -- in which MCBI has a 100% interest -- would be attributed to it, thereby rendering MCBI ineligible for the credit.[4]

MCBI's contention that its interests in noncommercial educational stations should not be attributed to it rests upon subsection (f) of the main text of § 73.3555. That provision (in its 1999 version) reads: "This section is not applicable to noncommmercial educational FM and noncommercial educational TV stations." 47 C.F.R. § 73.3555(f) (1999). In MCBI's view, this means that the whole of § 73.3555 -- including the attribution rules of note 2 -- is inapplicable to noncommercial educational stations, even for the purpose of determining bidding credit eligibility.

---

[4]Under § 73.5007(a), MCBI would be ineligible for the 35% credit because it would not be an applicant with "no attributable interest in any other media of mass communications," and would be ineligible for the 25% credit (or any credit, for that matter) because one of its "commonly owned mass media facilities serve[s] the same area as the proposed" station, *i.e.*, Pequot Lakes. 47 C.F.R. § 73.5007(a). Indeed, that was the rationale upon which the FCC denied MCBI's request for the credit. Mem. Op. & Order, 18 F.C.C.R. at 619.

The FCC has a different view. According to the Commission, the role of subsection (f) is only to make clear that the "various ownership limits" contained in the text of § 73.3555, "such as the local radio ownership rule or the radio-television ownership rule, do not apply to NCE stations." Mem. Op. & Order, 18 F.C.C.R. at 617. That is, "Section 73.3555 does not limit the number of NCE stations an entity may *own*." Appellee's Br. at 13 (emphasis added). But subsection (f) is not intended, the Commission maintains, to suggest that the attribution rules of note 2 are inapplicable to noncommercial educational stations for the purpose of determining bidding credit eligibility. *See* Mem. Op. & Order, 18 F.C.C.R. at 617. To the contrary, "all interests held in full-service NCE stations . . . constitute attributable interests within the meaning of Section 73.5008(c) for purposes of determining eligibility under Section 73.5007(a) for a new entrant bidding credit." *Id.* at 618.

Although the language of § 73.3555(f) does not compel the FCC's reading, neither is the language inconsistent with that reading. Moreover, as the Commission points out, the rule that establishes eligibility for the new entrant bidding credit -- § 73.5007(a) -- refers to "attributable interest[s] in *any* other media of mass communications, as defined in § 73.5008." 47 C.F.R. § 73.5007(a) (emphasis added). Indeed, the rule contains only one express exception: it "excludes only '[a]ttributable interests held by a winning bidder in existing low power television, television translator or FM translator facilities.'" Mem. Op. & Order, 18 F.C.C.R. at 617 (quoting 47 C.F.R. § 73.5007(a)). Similarly, the rule to which § 73.5007(a) points for the definition of "medium of mass communications," § 73.5008, "includes an AM or FM station without any indication that noncommercial educational stations are excluded." *Id.*

The FCC also reasonably argues that its reading better effectuates the policy behind the new entrant bidding credit. Its

interpretation, the FCC urges, "will promote the NEBC goal of fostering entry into broadcasting" by truly new entrants. *Id*. As the FCC notes, "[a] number of NCE licensees own dozens of full-power primary service stations," and "[i]t makes little sense to treat such licensees as 'new entrants.'" *Id.* Moreover, because "certain licensees can convert a station via routine application from commercial to NCE status . . . , drawing distinctions between stations based on their NCE or commercial status would undermine Congress's intent to 'disseminat[e] licenses among a wide variety of applicants.'" *Id.* at 617-18 (quoting 47 U.S.C. § 309(j)(3)(B)).

Finally, we note that, subsequent to the 1999 auction held in this case, the Commission amended § 73.3555(f) in ways that both parties agree make clear that interests in noncommercial educational stations are attributable for determining new entrant bidding credit eligibility.[5] MCBI contends the amendments "illustrate[] that the plain language of that subsection as it stood" at the time MCBI bid for the station "meant that NCE interests were not considered attributable interests." Appellant's Br. at 14 n.13 (emphasis omitted). The FCC, by contrast, contends that the amendments clarify what the Commission had always intended. *See* Mem. Op. & Order, 18 F.C.C.R. at 617. Because as an interpretive aid the amendments can support either position, we regard them as having only one point of real relevance here: they render it likely that this court's opinion --

---

[5]The section now reads: "The ownership limits of this section are not applicable to noncommercial educational FM and noncommercial educational TV stations. However, the attribution standards set forth in the Notes to this section will be used to determine attribution for noncommercial educational FM and TV applicants, such as in evaluating mutually exclusive applications . . . ." 47 C.F.R. § 73.3555(e).

based, as it is, on the 1999 version of subsection (f) -- will have little significance beyond this case.

## III

In sum, "[b]ecause the FCC's interpretation of its own regulations is reasonable, we defer to it." *Cassell v. FCC*, 154 F.3d 478, 484 (D.C. Cir. 1998). Moreover, "because under that interpretation the decision below does not depart from those regulations, we find no inconsistency in the Commission's actions." *Id.* The Commission's decision that MCBI is ineligible for a new entrant bidding credit is therefore

*Affirmed.*