# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued December 7, 2021       Decided February 11, 2022

No. 21-1075

CHILDREN'S HEALTH DEFENSE, ET AL.,
PETITIONERS

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED
STATES OF AMERICA,
RESPONDENTS

On Petition for Review of an Order of the
Federal Communications Commission

*W. Scott McCollough* argued the cause for petitioners. With him on the briefs was *Robert F. Kennedy Jr.*

*Stephen Diaz Gavin* was on the brief for *amici curiae* Safe Technology Minnesota, et al. in support of petitioners.

*William J. Scher*, Counsel, Federal Communications Commission, argued the cause for respondents. With him on the brief were *Todd Kim*, Assistant Attorney General, U.S. Department of Justice, *Justin D. Heminger* and *Allen M. Brabender,* Attorneys, and *Jacob M. Lewis*, Associate General Counsel, Federal Communications Commission.

Before: MILLETT and KATSAS, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* RANDOLPH.

RANDOLPH, *Senior Circuit Judge*: This is a petition for judicial review of an amendment to a regulation of the Federal Communications Commission. The regulation, as originally promulgated, authorized the installation on private property, with the owner's consent, of "over-the-air reception devices," regardless of State and local restrictions, "including zoning, land-use, or building regulation[s], or any private covenant, homeowners' association rule or similar restriction on property." Telecommunications Act of 1996; Preemption of Restrictions on Over-the-Air Reception Devices, 61 Fed. Reg. 46,557, 46,562 (Sept. 4, 1996) (codified at 47 C.F.R. § 1.4000(a)(1)). Back then, property owners used such antennas to receive direct satellite services, video programming, and television broadcast signals. *Id.* The regulation preserved local authority to impose "certain restrictions for safety and historic preservation purposes." Promotion of Competitive Networks in Local Telecommunications Markets, 15 FCC Rcd. 22,983, 23,027–28 (2000). The regulation also covered antennas capable of both receiving radio waves and transmitting signals. *Id.* at 23,027.

The FCC has amended its regulation several times. *See Bldg. Owners & Managers Ass'n Int'l v. FCC*, 254 F.3d 89, 91–93 (D.C. Cir. 2001). In 2004, the Commission determined that these antennas could serve not only a single property owner but also multiple customers in one location, provided the antennas were not "designed primarily for use as hubs for distribution of service." Promotion of Competitive Networks, 19 FCC Rcd. 5637, 5644 n.42 (2004). The 2004 order continued to stress that the regulation governed only "customer-end

equipment" serving "*the customer on such premises*." *Id.* at 5644. It did not cover carriers' locating "hub-sites on the premises of a customer in order to avoid compliance with a legitimate zoning regulation." *Id.*

In 2019, the Commission solicited comments on expanding coverage to include antennas that act as "hub sites" or relay service to other locations—thus, eliminating the 2004 prohibition on antennas "designed primarily for use as hubs for distribution of service." *See* Updating the Commission's Rule for Over-the-Air Reception Devices, 34 FCC Rcd. 2695, 2696, 2699 (2019). In its finalized order, the Commission expanded its regulatory preemption when: "(1) the antenna serves a customer on whose premises it is located, and (2) the service provided over the antenna is broadband-only." Updating the Comm'n's Rule for Over-the-Air Reception Devices, 36 FCC Rcd. 537, 540 (2021) [hereinafter Order] (amending 47 C.F.R. § 1.4000). The Order maintained several limitations, including the exemption for local "restrictions necessary for safety and historic preservation" and "requirements that antennas must be less than one meter in diameter or diagonal measurement." *Id.* at 540–41.[1] Local restrictions on antennas extending "more than twelve feet above the roofline" also continued to control land use. Preemption of Local Zoning Regulation of Satellite Earth Stations, 11 FCC Rcd. 19,276, 19,299 (1996); *see* Order at 540, 548 n.83.

Many comments, including those of the petitioners in this case, expressed concern about possible health effects from increased radiofrequency exposure. Petitioner Children's Health Defense (CHD) argued that the proliferation of commercial-grade antennas would increase the suffering of those with

---

[1] The Order stated that "there is no 'aesthetics exception' under" the rule. Order at 548.

radiofrequency sensitivity—violating their rights under the Americans with Disabilities Act (ADA), the Fair Housing Act (FHA), and the U.S. Constitution's protections of private property and personal autonomy.  CHD also asserted that the amendments would deny affected individuals fair notice and an opportunity to be heard.

I.

The Commission suggests that none of the individual petitioners have Article III standing because they fail to show individualized risks of increased harm from the amendment of the regulation.  The individual petitioners claim that they or their family members will suffer injury if new commercial-grade antennas get installed near their properties due to the Order's permissiveness.  The Commission posits that fears of greater antenna proliferation from the Order are not enough.  In the Commission's view, even if new antennas get installed near petitioners, it would not be apparent whether the deployments happened because of the Order.

The Commission is correct that anyone claiming injury from an agency's action or inaction, but who is not otherwise regulated directly, encounters some difficulty in establishing standing.  *See Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 914 (D.C. Cir. 2015).  But "if the complainant is 'an object of the action (or forgone action) at issue' . . . there should be 'little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'"  *Sierra Club v. EPA*, 292 F.3d 895, 900 (D.C. Cir. 2002) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561–62 (1992)); *see also State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015).  Here, two of the petitioners' interests are impacted directly by the Order.

The Order purports to preempt not only state and local regulations governing installation of relevant antennas, but also deed restrictive covenants. Order at 542–43. Petitioners Dr. Erica Elliott and Ginger Kesler allegedly suffer from radiofrequency sensitivity. They purchased homes in communities with restrictive covenants limiting antenna installation. Dr. Elliott's community has a charter requiring approval of new antennas and restricting the use of residential property for commercial activities. Ms. Kesler lives in an area with a homeowners' association; community by-laws and deed restrictions prohibit the installation of wireless antennas over two feet and commercial activity. Ms. Kesler purchased her home in part because of these restrictions.

Potential impairment of contractual or property rights can create an injury in fact. *See Sw. Power Pool, Inc. v. FERC*, 736 F.3d 994, 996 (D.C. Cir. 2013); *B&J Oil & Gas v. FERC*, 353 F.3d 71, 75 (D.C. Cir. 2004); *Idaho Power Co. v. FERC*, 312 F.3d 454, 460 (D.C. Cir. 2002). The restrictions just mentioned are, according to Dr. Elliott and Ms. Kesler, valuable because they prevent the installation of allegedly harmful commercial-grade antennas. By preempting these protections, the Order poses a direct threat to these petitioners' interests. These petitioners are thus an object of the Commission's Order—in the same way a municipality's zoning regulations would be an object of the Order. *See* Order at 542. Dr. Elliott and Ms. Kesler therefore have Article III standing. They need not show some greater probability of harm from the regulation of third parties. *Compare Defs. of Wildlife*, 504 U.S. at 561–62, *with Pub. Citizen, Inc. v. Nat'l Highway Traffic Safety Admin.*, 489 F.3d 1279, 1295 (D.C. Cir. 2007). And because Dr. Elliott and Ms. Kesler are CHD members, and the other elements of standing are plainly satisfied on this record, CHD has associational standing. *See Am. Trucking Ass'ns, Inc. v. Fed. Motor Carrier Safety Admin.*, 724 F.3d 243, 247 (D.C. Cir.

2013).[2]

II.

A.

Petitioners' initial contention is that the Commission did not establish its statutory authority for amending the regulation to include "hub and relay antennas that are used for the distribution of broadband-only fixed wireless services" even if "they are primarily used for this purpose . . .." Order at 537; *see Comcast Corp. v. FCC*, 600 F.3d 642, 655 (D.C. Cir. 2010).

Paragraph 26 of the Order identifies Section 303 of the Communications Act as granting it authority to "adopt rules governing services that use spectrum as well as rules applicable to antennas and other apparatus[es]." Order at 550–51 & n.102. Section 303(d) allows the Commission to "[d]etermine the location of classes of stations or individual stations." 47 U.S.C. § 303(d).

The Commission treats "antennas" as "stations." Footnote 102 of the Order cites the Commission's *Continental Airlines* decision, which explained why "antennas are 'stations' for [the] purposes of section 303(d)." Order at 550 n.102. *Continental Airlines* points to Act's definitions section. 21 FCC Rcd. 13,201, 13,217 & nn.107–08 (2006). The statute defines "'radio station' or 'station'" as "a station equipped to engage in radio communication or radio transmission of energy." 47 U.S.C. § 153(42). The phrase "radio communication" includes "the transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities,

---

[2] Because we conclude that CHD has associational standing, we do not address whether it has organizational standing.

apparatus, and services (among other things, the receipt, forwarding, and delivery of communications) incidental to such transmission." *Id.* § 153(40).

The definition of "radio communication" encompasses much of what is on the Internet—visual images, audio, and text. The technology involved here uses the radio-wave spectrum. Order at 550–51 n.102. And the Commission emphasizes the growth of online streaming services as a justification for expanding its antenna regulation. *Id.* at 545–46. The *Continental Airlines* decision's treating antennas as stations, with its reasoning anchored in the Act's text, survives any level of scrutiny. *See Chevron U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984). The Commission's citation of and reliance on *Continental Airlines* provided sufficient explanation for its authority to expand the regulation to hub-and-relay antennas carrying broadband Internet. *See* 5 U.S.C. § 553(c) ("After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose.").

Petitioners contend that Section 303 cannot support the Order. They claim that the Act erects a distinction between carrier equipment and end-user equipment—a distinction the Order obliterates. Whatever the merits of this argument, the issue is waived. Under 47 U.S.C. § 405(a), petitioners must "give the FCC a 'fair opportunity' to pass on a legal or factual argument." *Wash. Ass'n for Television & Children v. FCC*, 712 F.2d 677, 681 (D.C. Cir. 1983) (quoting *Alianza Fed. de Mercedes v. FCC*, 539 F.2d 732, 739 (D.C. Cir. 1976)); *see also Delaware v. Surface Transp. Bd.*, 859 F.3d 16, 21 (D.C. Cir. 2017); *Am. Scholastic TV Programming Found. v. FCC*, 46 F.3d 1173, 1177 (D.C. Cir. 1995).

Nowhere in CHD's ex parte submission or in the individual

petitioners' comments is the question of the Commission's authority under Section 303 raised. The closest CHD comes to presenting this issue is its statement: "Nor is this particular proposed rule reasonably necessary to the effective performance of the FCC's various responsibilities." J.A. 66. But this generality is not enough to preserve every conceivable claim of unlawful action. *See Wallaesa v. FAA*, 824 F.3d 1071, 1078 (D.C. Cir. 2016) (citing *Nuclear Energy Inst., Inc. v. EPA*, 373 F.3d 1251, 1297 (D.C. Cir. 2004)).[3] Nor were the petitioners' arguments raised by other parties' comments that the Commission lacked statutory authority. The other parties to the rulemaking proceeding did not question the Commission's authority under Section 303. *Contrast Competitive Enter. Inst. v. FCC*, 970 F.3d 372, 380 (D.C. Cir. 2020).

B.

Petitioners say the Order lacks a reasoned foundation because the Commission disregarded the human health consequences of its action. The Order's intended effect is to increase the number of antennas installed on private property. Petitioners assert that the result will be an increased risk of harm to individuals who are sensitive to radiofrequency electromagnetic radiation.

---

[3] Even if petitioners did not become aware of the Commission's view that Section 303 provided promulgating authority until after the Order issued, that does not spare them of the obligation to give the Commission opportunity to address their arguments. In such instances, challengers must seek reconsideration from the Commission before raising the matter in this court. *See In re Core Commc'ns, Inc.*, 455 F.3d 267, 276–77 (D.C. Cir. 2006); *Freeman Eng'g Assocs., Inc. v. FCC*, 103 F.3d 169, 182 (D.C. Cir. 1997); *Petroleum Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1169–70 (D.C. Cir. 1994).

The Commission dismissed these concerns by pointing to a 2019 order that studied the effects of exposure to wireless radiofrequency on human health and concluded that there was no need to implement stricter exposure limits. Order at 555 & n.133 (citing Proposed Changes in the Commission's Rules Regarding Human Exposure to Radiofrequency Electromagnetic Fields, 34 FCC Rcd. 11,687 (2019)). The Commission also noted that concerns about possible health effects from radiofrequency were "more appropriately directed" at the radiofrequency rulemaking and, hence, the comments regarding adverse effects were "outside the scope of this proceeding." *Id.* at n.133.

Ordinarily, an agency may dispose of claims by relying upon other rulemakings. *See Bechtel v. FCC*, 10 F.3d 875, 878 (D.C. Cir. 1993). Agencies can also limit the scope of their rulemaking and "relegate ancillary issues to separate proceedings." *Alon Ref. Krotz Springs, Inc. v. EPA*, 936 F.3d 628, 659 (D.C. Cir. 2019) (per curiam); *see also Mobil Oil Exploration & Producing Se. Inc. v. United Distrib. Cos.*, 498 U.S. 211, 231 (1991). The Commission therefore properly dispensed petitioners' health-and-autonomy-based claims by relying on its 2019 order.[4]

---

[4] This court remanded a case contesting the 2019 order because the Commission did not give sufficient reasons for its conclusions regarding the impact of radiofrequency waves on human health. *See Env't Health Tr. v. FCC*, 9 F.4th 893, 910 (D.C. Cir. 2021). But this does not require a remand here. As explained, the Commission expressly limited the scope of its rulemaking and directed comments regarding radiofrequency and health to the 2019 order's rulemaking. Order at 555 n.133. Agencies generally have discretion to break up their process of regulating into separate rulemaking proceedings—they "do not ordinarily have to regulate a particular area all at once." *Transp. Div. of the Int'l Ass'n of Sheet Metal Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 875 (D.C. Cir. 2021); *see Personal Watercraft*

Petitioners argue that the amendment to the regulation will violate the FHA and the ADA. It is unnecessary to go into any detail about how exactly the amendment would supposedly bring about these violations.[5] It is enough to point out that here, as in *Building Owners*, 254 F.3d at 100, petitioners are mounting a facial challenge. Whatever the validity of their FHA and ADA analyses, their allegations depend on the presence, within the range of a hub or relay antenna, of an individual who is adversely affected by radiofrequency radiation. The upshot is that there necessarily will be circumstances in which the amendment of the Order will have no adverse consequences because no such individual is in the vicinity. Yet in order to succeed in their facial challenge, petitioners had to show that there are no circumstances in which amendment of the regulation would be valid. *See Reno v. Flores*, 507 U.S. 292, 300–01 (1993); *INS v. Nat'l Ctr. for Immigrants Rts., Inc.*, 502 U.S. 183, 188 (1991); *Cellco P'ship v. FCC*, 700 F.3d 534, 549 (D.C. Cir. 2012); *Air Transp. Ass'n of Am., Inc. v. U.S. Dep't of Transp.*, 613 F.3d 206, 213 (D.C. Cir. 2010); Ronald A. Cass, *Nationwide Injunctions' Governance Problems: Forum Shopping, Politicizing Courts, and Eroding Constitutional Structure*, 27 Geo. Mason L. Rev. 29, 75 n.193 (2019); Aaron L. Nielson, *D.C. Circuit Review - Reviewed: Thoughts from Judge Randolph*, Yale J. on Regul. Notice & Comment (Dec. 8, 2017), https://perma.cc/T87D-HCXY.

---

*Indus. Ass'n v. Dep't of Commerce*, 48 F.3d 540, 544–45 (D.C. Cir. 1995). As such, it was not arbitrary for the Commission to direct petitioners to the 2019 order's rulemaking, which remains ongoing in light of our remand.

[5] Petitioners maintain in this court that the Commission's amendment will "preempt rights afforded by the FHA/ADA." This position is frivolous—a regulation can no more preempt a federal statute than a federal statute could preempt a provision in the Constitution.

Moreover, petitioners' arguments regarding the FHA and ADA are premised on the impact of radiofrequency exposure. But, as with petitioners' general concerns regarding health, the Commission sufficiently explained that its Order "does not change the applicability of the Commission's radio frequency exposure requirements" and that such concerns were more appropriately directed at its radiofrequency rulemaking. Order at 555 & n.133.

Petitioners also contend that the Order unlawfully preempts various state and local laws. In the Order, the Commission stated that it was now preempting local restrictions on the placement of antennas primarily used for hub and relay. *Id.* at 558. As we have discussed, the Commission treated these antennas as "stations," the location of which was within the Commission's regulatory authority under 47 U.S.C. § 303(d). The Supreme Court has instructed that the weight accorded an "agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness." *Wyeth v. Levine*, 555 U.S. 555, 577 (2009). Given our conclusion crediting the Commission's explanation for its statutory authority in its *Continental Airlines* decision, the Commission may also preempt restrictions on the placement of the new category of antennas now included in the regulation. *See Nat'l Ass'n of Regul. Util. Comm'rs v. FCC*, 880 F.2d 422, 431 (D.C. Cir. 1989).

Petitioners also raise concerns about the preemption of local ordinances or contractual provisions requiring property owners to provide notice to local governments or homeowners' associations before installing commercial-grade antennas. Although we uphold the Order against facial attack, we acknowledge that the Commission is treading on thin ice in asserting broad authority to preempt any notice requirements

12

affecting antenna installations.[6]

The petition is therefore denied.

*So ordered.*

---

[6] The Commission maintains that because local regulation of where these antennas are installed is preempted, there is no point in providing the local authorities or their citizens with notice of pending installations. But it does not follow that because citizens do not have a vote or a veto over the placement of an antenna on a neighbor's property, they are not entitled to know of the prospect. The First Amendment to the Constitution preserves the right of the people to petition the government for redress of grievances. *See Sorrell v. IMS Health Inc.*, 564 U.S. 552, 577 (2011) ("The First Amendment directs us to be especially skeptical of regulations that seek to keep people in the dark for what the government perceives to be their own good." (citation omitted)); *Am. Bus Ass'n v. Rogoff*, 649 F.3d 734, 738 (D.C. Cir. 2011) ("The right 'extends to [petitioning] all departments of the Government,' including administrative agencies and courts." (alteration in original) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972)); *Liberty Lobby, Inc. v. Pearson*, 390 F.2d 489, 491 (D.C. Cir. 1967) (Burger, J.) ("[E]very person or group engaged . . . in trying to persuade Congressional action is exercising the First Amendment right of petition."); 2 Joseph Story, Commentaries on the Constitution § 1894, at 619 (Thomas M. Cooley ed., 4th ed. 1873) (1833) (emphasizing the centrality of petitioning for redress of grievances in republican government).