# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 24-1108**
           **September Term, 2024**
FILED ON: AUGUST 12, 2025

INDIAN PEAK PROPERTIES LLC,
           PETITIONER

v.

FEDERAL COMMUNICATIONS COMMISSION AND UNITED STATES OF AMERICA,
           RESPONDENTS

---

On Petition for Review of an Order of the
Federal Communications Commission

---

Before: SRINIVASAN, *Chief Judge*, and MILLETT and PAN, *Circuit Judges*.

**J U D G M E N T**

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the petition for review of agency action by the Federal Communications Commission be **DENIED**.

I.

This case concerns the Federal Communications Commission's "over-the-air-reception devices" rule, or OTARD Rule. 47 C.F.R. § 1.4000. The Rule "authorized the installation on private property, with the owner's consent, of 'over-the-air reception devices'"—e.g., over-the-air antennas—"regardless of State and local restrictions, 'including zoning, land-use, or building regulation[s], or any private covenant, homeowners association rule or similar restriction on property.'" *Children's Health Def. v. FCC*, 25 F.4th 1045, 1047 (D.C. Cir. 2022) (quoting 47 C.F.R. § 1.4000(a)(1) (1997)). For the Rule's preemption of state and local regulations to apply to a given antenna, the antenna must "serve[] a customer on whose premises it is located." *In re Updating the Commission's Rule for Over-the-Air Reception Devices*, 36 FCC Rcd. 537, 540 ⁋ 9 (2021).

In addition to preempting certain state and local regulations, the OTARD Rule provides aggrieved property owners a mechanism to "petition the Commission for a declaratory ruling . . . to determine whether a particular restriction is permissible or prohibited" under the Rule. 47 C.F.R. § 1.4000(e). The Rule states that such petitions "will be put on public notice." *Id.* It also prescribes what happens during a "proceeding" on a petition. For example, "if a proceeding is initiated," then "the entity seeking to enforce the antenna restrictions in question must suspend all enforcement efforts pending completion of review." *Id.* § 1.4000(a)(4).

This case concerns a single-family home in Rancho Palos Verdes, California. The property has been owned for many years by either James A. Kay, Jr., or Indian Peak, a Nevada limited liability company for which Kay is the principal and predecessor-in-interest. In 2004, the City granted a conditional use permit that allowed the placement of five antennas on the roof. In the ensuing years, the antennas on the roof proliferated. In 2014, City staff investigating a complaint about the number of commercial antennas on the roof "discovered there were now at least 11 vertical antennae (or antenna masts) and other equipment on the roof." *City of Rancho Palos Verdes v. Indian Peak Props.,* LLC, No. B303638, 2021 WL 5316348, at *2 (Cal. Ct. App. Nov. 16, 2021). The City concluded that there was no one living in the home and that it was vacant but for activity related to the antennas.

In 2018, the City revoked Indian Peak's conditional use permit for the antennas and filed a public nuisance lawsuit in state court seeking removal of the antennas. Indian Peak sought to preserve the antennas through a variety of routes, including by petitioning the Commission for a declaratory ruling that the City's actions were preempted under the OTARD Rule.

Indian Peak filed its initial petition with the Commission in April 2020. The Commission's Wireless Telecommunications Bureau dismissed the petition without prejudice in a letter ruling. The ruling explained that the petition "fail[ed] to provide sufficient information" regarding a number of requirements for the application of the OTARD Rule, including whether "the antennas on the building serve a customer located on the premises," as the Bureau understood the Rule to require. J.A. 569–70; *see also* 47 C.F.R. § 1.4000(a)(5). While the petition asserted that various commercial entities have "access" to the antennas to "provide back-up and additional connectivity," the petition did not assert that "Indian Peak or any other user is a customer" on the premises. J.A. 570 (citation omitted).

Indian Peak tried again. This time it filed five new petitions regarding specific antennas on the roof. Again, the Bureau ultimately dismissed the petitions without prejudice, and for similar reasons. The ruling stated that "the purposes and uses of the majority of the antennas . . . remain[] unclear." J.A. 614. A variety of inconsistent statements of fact in Indian Peak's filings left the agency unable to conclude that certain antennas were "serving end users at the premises." J.A. 617. The ruling also addressed a new argument raised by Indian Peak: that its 2020 petition should have stopped the City's ongoing enforcement actions because it initiated a proceeding, triggering the OTARD Rule's requirement to suspend enforcement efforts pending review of a petition. The agency rejected that contention, citing its longstanding practice of dismissing petitions without prejudice in certain situations without initiating a proceeding.

Indian Peak applied for full Commission review. It advanced three arguments. First, it contended that there were "customers" on the premises: the service providers for the antennas themselves. Second, it disputed the ruling's conclusion that agency staff have discretion to determine whether to initiate a proceeding on a petition. Nonetheless, Indian Peak stated that there was no point in putting the petitions on public notice at this late stage, and it identified no benefit to initiating a proceeding, instead describing the petitions in question as "ripe for grant." J.A. 676. Third, it asserted that the Commission's earlier failure to initiate a proceeding violated its due process right.

On March 7, 2024, the full Commission denied Indian Peak's application for review. First, the Commission rejected Indian Peak's argument that the service providers were adequate end users for purposes of the OTARD Rule. It explained that the Commission had "never altered the basic requirement that the rule benefit a human antenna user." J.A. 763. The Commission crystallized that requirement as follows: "For OTARD protections to attach to a fixed wireless antenna, the petitioner must demonstrate that it is regularly being used to provide signals to human end users at the location where the equipment is installed." J.A. 764. Indian Peak's "allegations of a human presence at the antenna site" were "vague to the point that [the Commission was] unable to conclude that human users [were] on site to more than a *de minimis* extent." J.A. 765. Second, the Commission dispensed with Indian Peak's argument that it was error not to place the petition on public notice by deeming the issue "moot." J.A. 768. The Commission pointed to Indian Peak's statement that its petitions were "ripe for grant" without further procedure. Finally, the Commission found that Indian Peak had forfeited its due-process arguments by failing to assert them until the final stage of agency review. J.A. 769.

Indian Peak now petitions for review of the Commission's final order. We have jurisdiction under 28 U.S.C. § 2342(1) and 47 U.S.C. § 402(a).

II.

None of the arguments that Indian Peak advances on appeal are properly presented.

Much of Indian Peak's briefing is dedicated to arguing against the human-presence requirement described in the Commission's final order. But—as Indian Peak's counsel confirmed at oral argument, *see* Oral Argument at 1:30–2:02—Indian Peak does not argue that the Commission lacks the substantive authority to establish a human-presence requirement. Instead, Indian Peak argues only that the human-presence requirement is a legislative rule that needed to be adopted pursuant to notice-and-comment rulemaking under the Administrative Procedure Act.

That argument was not preserved before the Commission. The Communications Act requires a party to file a petition for reconsideration if it seeks review "rel[ying] on questions of fact or law upon which the Commission . . . has been afforded no opportunity to pass." 47 U.S.C. § 405(a). Perhaps Indian Peak could be excused for not objecting to the human-presence requirement before the Commission's final order, when the Commission first articulated its claimed human-presence requirement as a clear standard. But after that order, Indian Peak should have filed a petition for reconsideration raising the APA argument before seeking judicial review. *In re Core Commc'ns, Inc.*, 455 F.3d 267, 276–77 (D.C. Cir. 2006). There is no basis for excusing

Indian Peak's failure to do so. *Nat'l Lifeline Ass'n v. FCC*, 983 F.3d 498, 509 (D.C. Cir. 2020) (This Court has "strictly construed § 405(a), and [has] made it clear that [it] will not review arguments that have not first been presented to the Commission." (quoting *Core*, 455 F.3d at 276; *Qwest Corp. v. FCC*, 482 F.3d 471, 474 (D.C. Cir. 2007))); *see also Cassell v. FCC*, 154 F.3d 478, 485 (D.C. Cir. 1998).

As for Indian Peak's argument that it was error to dismiss its petitions without initiating a proceeding (which would have in turn triggered various procedural requirements like public notice and the bar against enforcing the restrictions at issue while the proceeding is pending), Indian Peak again failed to preserve its challenge before the Commission. Indian Peak did not ask for a proceeding to be opened, nor did it ask for any of the concomitant procedural protections. Instead, Indian Peak told the Commission that the petitions were "ripe for grant." J.A. 676. The Commission accepted that representation and concluded that there would be "no purpose" in going back because Indian Peak thought "the record [was] adequate to establish its entitlement to preemption relief." J.A. 768. Having decided that Indian Peak was *not* entitled to such relief, the Commission deemed any procedural objections moot. *Id.* Again, the Commission never ruled on the merits of Indian Peak's argument that it was entitled to a proceeding and public notice; and, again, Indian Peak did not move for reconsideration of the Commission's decision to deem the argument moot. Thus, these procedural arguments were not properly exhausted before the Commission.

Finally, Indian Peak's due-process arguments, as the Commission found, were forfeited because they were not advanced until the final stage of agency review. In its opening brief on appeal in this Court, Indian Peak ignored the Commission's forfeiture finding. In its reply brief, Indian Peak said only that, "to the extent that [its] constitutional claim was not properly presented, the Commission exercised its discretion in the Order and addressed the merits." Reply Br. 8 (internal citations omitted). The Commission was clear in its final order, however, that it saw forfeiture as dispositive and only addressed the merits of the due-process argument in the alternative. Thus, the due-process arguments are not properly before us.

\* \* \*

For the foregoing reasons, the petition for review is denied.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Clifton B. Cislak, Clerk

BY:   /s/
Daniel J. Reidy
Deputy Clerk